# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs August 14, 2012

## STATE OF TENNESSEE v. MICHAEL D. BOONE

**Appeal from the Criminal Court for Davidson County**
**No. 2010-A-266     Steve Dozier, Judge**

_____

### No. M2011-02435-CCA-R3-CD - Filed June 10, 2013

_____

This direct appeal presents a certified question of law pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure.  After the trial court denied his motion to suppress, the Defendant, Michael D. Boone, entered a guilty plea in the Davidson County Criminal Court to possession with intent to sell or deliver .5 grams or more of a substance containing cocaine, a Class B felony, and possession with intent to sell or deliver not less than one-half ounce or more than ten pounds of marijuana, a Class E felony.  The trial court ordered the agreed sentence of twenty-four years in the Tennessee Department of Correction.  Boone properly reserved the following certified question of law: "Does the affidavit of probable cause in the warrant . . . contain sufficient information to establish a nexus between the residence to be searched and criminal activity; and, if so, does the affidavit further contain reliable information of ongoing criminal activity so as to establish probable cause . . . ?"  After a thorough review of the record and applicable authorities, we conclude that the trial court did not err when it determined the affidavit provided sufficient probable cause to support the search warrant.  As such, we affirm the trial court's order denying the Defendant's motion to suppress, and we affirm the Defendant's judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined.  CAMILLE R. MCMULLEN, J., filed a concurring opinion.

Dawn Deaner and Emma Rae Tennent (on appeal), and Jonathan D. Wing (at hearing), Nashville, Tennessee for the Appellant, Michael D. Boone.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION
## I. Facts

This case arises from police officers' search of a residence located at 1409 Jackson Street on November 4, 2009, pursuant to a search warrant issued earlier that same day. The warrant was based on an affidavit which stated "there is probable and reasonable cause to believe" that certain items, including controlled substances and their paraphernalia, scales, mixing devices, packaging materials, proceeds, and financial records, would be found "within or upon the premises known as **1409 Jackson Street (Andrew Jackson Courts)**, Nashville, Davidson County." Pursuant to this search, the officers recovered cocaine, marijuana, and drug paraphernalia. The Defendant was arrested inside the residence during the search. He subsequently filed a motion to suppress arguing, among other things, that the search warrant was invalid because it did "not sufficiently allege probable cause" and "was stale at the time of the request for the search warrant."

At the hearing on the motion to suppress, Detective Matt Grindstaff of the Metropolitan Nashville Police Department testified that he prepared the affidavit for the search warrant and that he participated in the execution of the warrant. He explained that he sought the search warrant because he received information that a suspect named "John," who he later identified as the Defendant, was selling narcotics from 1409 Jackson Street. He confirmed this with two controlled buys from that location, neither of which he mentioned in the affidavit seeking a search warrant. The third controlled drug buy was within 72 hours of his seeking a search warrant.

The affidavit in support of the search warrant was admitted into evidence at the hearing and provided, in pertinent part, the following:

> During the course of a narcotics investigation, your affiant received information that illegal narcotics were at the premises of 1409 Jackson Street, Nashville, Davidson County, Tennessee. Within the last 72 hours, your affiant met with a confidential informant, hereafter referred to as "CI". The CI was searched for contraband; none was found, and stripped of all personal money. The CI called the phone number (615) 788-[XXXX] and spoke to a suspect known as "John" who agreed to sell a quantity of crack cocaine. The CI was then given previously photocopied buy money and instructed to go to the stated address and purchase a quantity of crack cocaine, which said CI did. Detective Williams observed the suspect walk out of the target door. The suspect entered the passenger seat of the CI's vehicle. The CI and suspect had a brief transaction. The suspect then returned directly and freely inside the location

through the target door. The CI returned directly to detectives and turned over a quantity of yellow rock substance. The yellow rock substance field tested positive for cocaine base. The CI and CI's vehicle was then researched and no additional money or contraband of any kind was recovered. The CI is familiar with the drug cocaine in its various forms from past experience. The CI has provided information in the past that has resulted in the lawful recovery of illegal narcotics, arrests, and convictions. Your affiant will provide the CI name only to the judge issuing this search warrant. The CI wishes to remain anonymous for fear of reprisal.

In the affidavit, Detective Grindstaff said he had served in narcotics enforcement for the Metropolitan Nashville Police Department since 2006, and based on his training, experience, and information he knew that:

a. Drug traffickers very often place their assets derived from their criminal activities in the names of other persons . . . or . . . use false names and identities . . . .

b. Drug dealers actually own and continue to use such assets derived from criminal activities and exercise dominion and control over this property, though it may be titled or recorded in the names of others.
   . . . .

e. Drug dealers very often will hide contraband, proceeds of drug sales and records of drug transactions in secure location such as their own residences, locations which they control but which are titled in the names of others, residence of others who are participants in or aiders and abettors of the drug conspiracy, their businesses, . . . to conceal them from law enforcement officials.

Detective Grindstaff testified that the magistrate signed the search warrant, and the detective and other officers executed the search warrant. The detective said that, after entering the residence, he smelled a strong odor of marijuana throughout the residence. He attempted to clear the Defendant's bedroom, and the Defendant jumped out of the bed he was lying in with a co-defendant. The Defendant began to move toward some cocaine that was on the dresser, when officers took the Defendant into custody. Upon his arrest, the Defendant began acting as if he was fainting and appeared to be unable to talk or walk. The officers called an ambulance.

Detective Grindstaff moved the Defendant into another bedroom, where two children were located, and informed the Defendant that, even if he went to the hospital, he would still go to jail. The Defendant then stated that his co-defendant had nothing to do with the

narcotics found in the home.  The Defendant made no other statements before the ambulance arrived and took him to the hospital.

On cross-examination, Detective Grindstaff acknowledged that, based on the two prior drug transactions with "John," Detective Grindstaff was familiar with the Defendant's face and his alias.

Based upon this evidence, the trial court denied the Defendant's motion to suppress. The trial court's February 2011 order stated:

> [T]he Court finds that the search warrant information indicates that this was not a one time sale.  The search warrant indicates drugs were at the premises and sold to the informant from the [D]efendant coming directly out of the location.  As indicated in the affidavit:
>
>> From you affiant's training and experience your affiant knows that persons present at locations where illegal narcotics are sold and/or used often have contraband, narcotics, paraphernalia, weapons or other evidence of criminal conduct hidden on their persons or in their belongings.
>>
>> . . . .
>>
>> d. Drug dealers maintain books, records, receipts, notes, legers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances.  These drug dealers commonly "front", or loan on consignment, drugs to their customers who must pay for their drugs from the proceeds of their re-sales.  As a result the drug dealers must keep records of such transactions where they can have a quick and reliable means to recall the status of such transactions.  Very often, these records will be maintained at a residence or business used by the drug dealer or one of his accomplices.
>>
>> e. Drug dealers very often will hide contraband, proceeds of drug sales and records of drug transactions in secure location such as their own residences, locations which they control but which are titled in the names of others, residences of others who are participants in or aiders and abettors of the drug conspiracy,

their businesses, and bank safe deposit boxes to conceal them from law enforcement officials.

In this case, the Court finds that the information provided by the officer indicates this is not a one time sale as was the case in [*State v.*] *Archibald* [334 S.W.3d 212 (Tenn. Crim. App. 2010)]. The search warrant indicates drugs were at the premises and then sold directly to the informant. The target left the premises, went to the informant's vehicle and then back to the same location. If the target was not tied to that address, the target would have not needed to go back and then return freely. There was no knocking by the target to enter the home and no refusal to be allowed in all of which indicated he had free access to the residence and therefore was tied to the location. Although there was no direct information that this is the [D]efendant's house, reasonable inferences are allowed as to where a criminal would hide evidence of the crime. *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009) (citing *Reid* at 275). As noted in *Saine*,

> [T]here need not be definite proof that the seller keeps his supply at his residence. . . . [I]t will suffice if there are some additional facts, (such as that . . . the seller or buyer went to his home prior to the sale or after the sale . . .) Which would support the inference that the supply is probably located there.

*Id*[.] at 206 (quoting 2 Wayne R. LaFarve, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) (4th ed. 2004 & Supp. 2008-09) (footnotes omitted)).

The Defendant is not charged with the sale listed in the search warrant but rather for his possession for resale fo the substance located at this same address on November 4, 2009 within seventy-two hours of a drug sale by a person with ties to this residence. This case, similar to the factual situation in *State v. Gleaves*, No. M2009-01045-CCA-R3-CD 2010 Tenn. Crim. App. LEXIS 672 (Tenn. Crim. App. at Nashville, Aug 13, 2010), involves a home in which a drug dealer used, whether he lived there or not, as a site to sell drugs to an informant. The police observed the defendant leave the house, go directly to the informant to sell the drugs and then return to the same residence. Therefore, the inference that the dealer's supply was located at the residence was reasonable.

The Court finds the affidavit contained sufficient information for the issuing judge to have found probable cause for the issuance of the warrant. The search warrant contained clear probable cause with an appropriate nexus between the observed sale and the location to be searched. The information in the warrant was not stale.

On October 5, 2011, the Defendant pled guilty to both indicted charges, possession with intent to sell or deliver .5 grams or more of a substance containing cocaine, a Class B felony, and possession with intent to sell or deliver between one-half ounce and ten pounds of marijuana, a Class E felony. He received concurrent sentences of twenty-four years as a Range III, persistent offender and six years as a career offender, respectively, to be served consecutively to three unrelated convictions.

At the guilty plea submission hearing, the State provided the following facts in support of the Defendant's guilty plea:

Had this case gone to trial, the State's proof would have shown that on November 4 [th], 2009, at approximately 9:45 p.m. detectives with the north crime suppression unit of the Metro police department executed a narcotics related search warrant at 1409 Jackson Street in Davidson County. When they made entry, they took both of these defendant's into custody in their bedroom. They were both in bedroom Number 2 at that time. [Co-defendant] was in the bed, and [the Defendant] was between the dresser and the bed.

Shortly after police made entry, [the Defendant] began having fainting spells and was eventually transported to General Hospital. While waiting for the ambulance, the [D]efendant was informed that there were narcotics in the room and he stated multiple times, she doesn't have anything to do with this. He was then taken to the hospital.

[Co-Defendant] was Mirandized . . . . [and] stated that [the Defendant's] name was Jon. Police later determined that Jon was an alias due to the fact that [the Defendant] had some outstanding warrants.

When police interviewed [Co-defendant], she said that they had been selling cocaine and marijuana on and off for about two and a half to three years. She stated that [the Defendant] sold about $300 per week in cocaine and about $100 per week in marijuana. . . .

Police, when they . . . executed the warrant recovered a number of items. They found a couple of different bags of marijuana. One was a bag that had 12 smaller bags of marijuana in it that weighed approximately 16 grams. They also located an area of the loose white rock substance . . . They also found a plastic baggie with a white rock substance in it. Then they found another bag that had a white rock and powder substance in it. . .

The lab confirmed that the marijuana was in fact marijuana. They weighed a total of 20.9 grams. And the rock-and-powder-like substances did contain a cocaine base and weighed a total of 6.5 grams.

The Defendant pled guilty to the offenses and properly reserved the following certified question of law for each judgment:

Does the affidavit of probable cause in the warrant that was used to search the residence at 1409 Jackson Street on November 4, 2009 contain sufficient information to establish a nexus between the residence to be searched and criminal activity; and, if so, does the affidavit further contain reliable information of ongoing criminal activity so as to establish probable cause, so as not to violate the defendant's protections against unreasonable searches as guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 7, of the Tennessee Constitution?

This timely appeal followed.

## II. Analysis

On appeal, the Defendant contends the trial court erred in denying his motion to suppress evidence seized pursuant to "a search warrant that was not supported by sufficient and timely probable cause." The State responds generally that the "court properly denied [the Defendant's] motion to suppress because the affidavit supporting the warrant established a nexus between the criminal activity and the residence searched and criminal activity was ongoing in the residence."

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)).

"Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

The United States and Tennessee Constitutions state that search warrants shall issue only upon probable cause. U.S. Const. amend. IV; Tenn. Const. Art. 1, section 7. "As a general rule, a search warrant shall be issued only on the basis of an affidavit, sworn before a 'neutral and detached' magistrate, which establishes probable cause for its issuance." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn .1999) (quoting *State v. Jacumin*, 778 S.W.2d 430, 431 (Tenn.1989)) (citing *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992)). A showing of probable cause generally requires "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Johnson*, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993) (citing *Lea v. State*, 181 S.W.2d 351, 352 (Tenn. 1944)).

An affidavit establishing probable cause is an indispensable prerequisite to the issuance of a search warrant. *See, e.g.*, T.C.A. § 40-6-103; Tenn. R. Crim. P. 41(c); *State v. Sales*, 393 S.W.3d 236, 240 (Tenn. Crim. App. 2012). Such probable cause "must appear in the affidavit [itself] and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Id.* (citing *Moon*, 841 S.W.2d at 338; and *Henning*, 975 S.W.2d at 295). To sufficiently make a showing of probable cause, an affidavit "must set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched." *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). However, a decision regarding the existence of probable cause requires that the affidavit contain "more than mere conclusory allegations by the affiant." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999); *see also Moon*, 841 S.W.2d at 338.

A finding of probable cause made by an issuing magistrate is entitled to great deference. *State v. Yeomans*, 10 S.W.3d 293, 296 (Tenn. Crim. App. 1999) (citing *Melson*, 638 S.W.2d at 357). Therefore, the standard to be employed in reviewing the issuance of a search warrant is "whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause." *State v. Meeks*, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993).

This Court has previously held that a single drug transaction can provide probable cause. *See State v. Linda Kay Batts*, No. W2006-00419-CCA-R3-CD, 2007 WL 1015444, 286, at *9 (Tenn. Crim. App., at Jackson, Apr. 4, 2007), *Tenn. R. App. P. 11 application denied* (Tenn. Aug. 13, 2007). As stated in *Batts*:

> In both *State v. Powell*, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000), and the more recent case of *State v. Wanda Booker*, No. M2005-02788-CCA-R3-CD, 2006 WL 3498085, at *2 (Tenn. Crim. App., at Nashville, Nov. 21, 2006) (no Tenn. R.App. P. 11 application filed), this Court addressed analogous situations. In *Powell*, as in the present case, probable cause was based on a single drug purchase which occurred within seventy-two hours of the issuance of the search warrant. *Powell*, at 263. The affiant facilitated the controlled buy of a small amount of methamphetamine and monitored the entire event using [a] wiretap worn by the informant. *Id.* In *Booker*, probable cause for a warrant was based on a single controlled buy of an unspecified quantity of crack cocaine. *Booker*, 2006 WL 3498085, at *1. The buy occurred within ninety-six hours of the issuance of the warrant. In that case, the affiant also facilitated the buy and monitored the buy using a wiretap worn by the informant. *Id.* In both *Powell* and *Booker*, this Court concluded that independent police corroboration provided sufficient support to satisfy the two-pronged analysis for establishing probable cause for a search warrant with information provided by a criminal informant. *Powell*, at 263; *Booke*r, 2006 WL 3498085, at *2.

"A single drug sale is a crime and can establish probable cause for obtaining a search warrant." *Allen Jean Stephens v. State*, No. W2006-02773-CCA-R3-PC, 2007 WL 2872368, at *5 (Tenn. Crim. App., at Jackson, July 10, 2007), *Tenn. R. App. P. 11 application denied* (Tenn. Feb. 25, 2008).

In *State v. Saine*, the Tennessee Supreme Court held that circumstances similar to those in this case constituted probable cause to issue a search warrant. *State v. Saine*, 297 S.W.3d 199, 206-07 (Tenn. 2009). In that case, a detective swore by affidavit that he observed the defendant leave his residence, sell drugs to a confidential informant, and return directly to his residence. *Id.* at 203-04. The detective also stated in the affidavit that, in his experience, drug sellers commonly stored drugs, proceeds, and records thereof in their residences or "other locations which they control." *Id.* at 202. The Supreme Court explained that an affidavit lacking "definite proof that the seller keeps his supply at his residence" gives probable cause to search a location as long as the affidavit contains "some additional facts," such as that the seller went to his home either before or after the sale, "which would support

the inference that the supply is probably located there." *Id.* (quoting 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) (4th ed. 2004 & Supp.2008-09) (footnotes omitted). The Court concluded that, because the detective stated his knowledge of drug sellers' storage practices and because the detective observed the defendant in that case travel directly to the controlled buy location from his home and directly return, the magistrate had probable cause to believe the home would contain evidence of his drug activity. *Id.* at 206-07.

In the case under submission, in the relevant affidavit, Detective Matt Grindstaff asserted that he received information that "illegal narcotics were at the premises of 1409 Jackson Street." Based upon this information, he met with a confidential informant who spoke with a man named "John," who agreed to sell him crack cocaine, with the meeting place to be the stated address. The confidential informant went to the stated address, where another detective saw the Defendant exit from the door of the home. The Defendant got into the confidential informant's car, sold him crack cocaine, and then returned "directly and freely" inside the location through the target door. Police then confirmed that the Defendant had sold the confidential informant cocaine. Based upon this, they sought a warrant to search the home where they saw the Defendant exit from before the sale and return to after the sale. We conclude that the magistrate did not violate his "great deference" when he determined that the affidavit provided sufficient probable cause for the issuance of a search warrant. We similarly conclude the trial court did not abuse its discretion when it denied the Defendant's motion to suppress. *See State v. Ronald Jerome Gleaves*, No. M2009-01045-CCA-R3-CD, 2010 WL 3210397, at *6-7 (Tenn. Crim. App., at Nashville, Aug. 13, 2010)(affirming trial court's denial of motion to suppress search warrant based upon "[t]he informant's association of [the drug dealer] with the drug-related activity at the residence as well as [the drug dealer's] observed exiting and entering the residence [because these facts] impl[y] that [the drug dealer], at a minimum, was free to come and go from the residence."), *perm. app. denied* (Tenn. Jan. 13, 2011); *State v. Edward Garcia Summers*, No. M2008-02684-CCA-R3-CD, 2010 WL 1741363, at *3-4 (Tenn. Crim. App., at Nashville, Apr. 28, 2010) (holding that affidavit supported probable case to search target residence where it stated that law enforcement officers saw the defendant exiting from and returning to a residence before and after the sale of drugs to an affidavit. The affidavit also contained information known to law enforcement officer about the practices of drug dealers keeping contraband and other evidence of drug sales and transactions in residences), *perm. app. denied* (Tenn. Sept. 22, 2010).

We recognize the Defendant's argument that there must be a "nexus among the criminal activity, the place to be searched, and the items to be seized." *See State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009). As previously stated, we conclude that there existed such a nexus, which was created by law enforcement officers personal observation of the

Defendant exiting and freely reentering the residence before and after the drug sale. The Defendant, and the dissent, cite one case, as primary support the contention that there was no nexus between his residence and the criminal activity: *State v. Archibald*, 334 S.W.3d 212 (Tenn. Crim. App. 2010). Because of the division within the panel on the case presently before us, we think it important to address the distinction between *Archibald* and the case presently before us.

In *State v. Archibald*, a case infrequently cited since its publication, this Court affirmed the trial court's grant of a motion to suppress. 334 S.W.3d at 212. In *Archibald*, the defendant filed a motion to suppress a search based upon an affidavit he said did not establish probable cause. *Id.* at 213. The affidavit stated that, within the last 72 hours, a confidential informant was under surveillance "and was observed walking to the rear door of the apartment number 5A" and entering the apartment through the door. *Id.* at 213-14. The confidential informant could be heard by officers talking with "someone" inside the residence, and then he was seen exiting the residence through the rear door. *Id.* at 214. He walked back to the officers and gave them the contraband, "which was believed by the [confidential informant" to be crack cocaine. . . ." Based upon this information, officers sought a search warrant for the premises. *Id.*

The trial court in *Archibald* held that the affidavit failed to provide "facts providing a nexus between the crime and the [place] to be searched." *Id.* at 215. We agreed, noting that the affidavit:

> contains no other information about the drug exchange in the residence. It does not, for instance allege: a quantity of drugs received; the identity of the seller; the identity of the apartment's resident or residents; or the presence of any other persons or things inside the apartment. It does not allege that the seller resided at the apartment.

*Id.* We went on to state:

> Although the affidavit in this case contained information establishing a nexus between the *Defendant's apartment* and criminal activity, it contained no information tending to establish how long that nexus would persist. It did not, for instance, contain any facts supporting an inference that the person who sold drugs to the CI was more than a one-time visitor to the apartment. Likewise, it did not establish that the CI observed any drugs other than the drugs he bought . . . . [T]he affidavit in this case would have been sufficient had it contained information reliability establishing ongoing criminal activity.

-11-

*Id.* at 215-16 (emphasis added).

Importantly, in *Archibald* this Court clearly stated that, although the information in the affidavit established, there was a nexus between the defendant's apartment and the criminal activity, the affidavit did not contain information sufficient to establish probable cause for the issuance of a search warrant. This was, in part, because no law enforcement officer in that case, unlike the facts presently before us, observed the defendant himself exit and freely enter the apartment. Instead, they saw the confidential informant enter the apartment and then leave. Further, the affidavit in that case did not contain the personal observations of the police officers of the defendant exiting, sitting with the confidential informant, and then reentering the target location. Finally, the affidavit in *Archibald* did not, as in this case, contain any language establishing that homes used by drugs dealers, whether they reside there or not, often contain contraband, drugs, etc. The affidavit in this case contained a detailed, reasonable, and rational explanation about why the officer believed, from his experience, that the target location may contain evidence of drug sales. Accordingly, we conclude that *Archibald* is distinguishable from the facts of this case. We further conclude that there was a sufficient nexus between the residence searched in this case and the criminal activity based upon the Defendant's exiting from and reentry into the residence before and after the drug sale.

The Defendant and the dissent further attempt to distinguish *Saine* on the grounds that the search warrant alleges a "known drug dealer" was selling the drugs out of the target residence. We disagree that the deciding factor as to whether probable cause exists hinges upon whether the drug dealer is "known" to have previously sold drugs. We think a more logical conclusion, based on the facts and circumstances of this case, is that probable cause hinges upon the law enforcement officer's observations of the drug dealer freely exiting and reentering the residence (even if only a first time dealer), combined with the law enforcement officer's knowledge and experience regarding a drug dealer's use and storage of drugs within a residence out of which they have been observed selling drugs. Because we find *Archibald* factually distinguishable from this case and because we find *Saine* factually similar, we conclude that the trial court did not err when it denied the Defendant's motion to suppress. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Upon a thorough review of the record, we affirm the order of the trial court denying the Defendant's motion to suppress. We affirm the Defendant's convictions.

_____
ROBERT W. WEDEMEYER, JUDGE