IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 21, 2009 Session

## STATE OF TENNESSEE v. ROBERT LEE ARCHIBALD, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2008-C-2485     Monte Watkins, Judge**

_____

**No. M2009-00545-CCA-R3-CD - Filed February 12, 2010**

_____

The Defendant, Robert Lee Archibald, Jr., was charged with one count of possession with intent to sell or deliver twenty-six grams or more of cocaine within 1000 feet of a school, one count of possession of drug paraphernalia, and one count of possession of a firearm during the commission of a dangerous felony. He filed a motion to suppress the evidence against him, arguing that the search warrant authorizing the search was defective. The Davidson County Criminal Court granted his motion. The State now appeals that grant. After our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Hugh T. Ammerman, Assistant District Attorney General, for the appellant, State of Tennessee.

Frank E. Mondelli and Peter D. Heil, Nashville, Tennessee, for the appellee, Robert Lee Archibald, Jr.

**OPINION**

**Factual Background**

We glean the facts underlying this appeal from the affidavit in support of the search warrant at issue and from the trial court's order granting the Defendant's motion to suppress.

The May 23, 2008 affidavit was sworn by Detective Michael Wilson of the Metro Nashville Police Department, and aimed to establish that Det. Wilson had "probable and reasonable cause to believe that evidence of violations of Tennessee criminal statutes," specifically RICO, money laundering, Drug Control Act of 1989, and weapons possession statutes, "will be found within or upon the premises known as 5A University Court, Nashville, Davidson County, Tennessee, upon the person(s) . . . using or occupying the subject location . . . ." The affidavit then contains a "boilerplate" recitation of the evidence sought.

Detective Wilson's affidavit contains a summary of the facts supporting the probable cause explained above:

> This affidavit is made by [D]etective Michael Wilson who has been a police officer since 2001 . . . . Your affiant now testifies herein, within the last 72 hours, an undercover purchase of narcotics has taken place at 5A University Ct., which facts are based on personal knowledge and facts stated and information received from other law enforcement officers. The reference herein afterwards to CI refers to the police confidential informant. Said CI was searched for contraband and stripped of any personal money. Said CI was also searched for the possession of illegal drugs and was found to have none. Said CI was wired for surveillance purposes. The CI was then provided with previously photocopied buy money and instructed to purchase a quantity of crack cocaine from the location of 5A University Ct. in Nashville, Davidson [C]o., T[N]. The CI was then driven near the location at 5A University Ct. The CI was under surveillance and was observed walking to the rear door of the apartment number 5A which was labeled with white lettering. The CI then entered the apartment through the door. The CI could be heard talking with someone inside the residence and the CI exited the residence through the rear door and walked back to the undercover officers. Upon contact with the officers the contraband which was believed by the CI to be crack cocaine was given to undercover officers. The substance was tested in the field and found to be of a cocaine base. The CI was then searched again and found not to have any money or contraband on their person. The CI has been used in the past for the successful recovery of illegal narcotics as well as the successful prosecution of such offenses.
>
>     . . . .
>
> Your affiant wishes to search each person or persons on the above premises; From the affiant's training and experience, he has learned that most persons present at premises where controlled substances are sold, bought,

-2-

and/or used, have controlled substances, paraphernalia, weapons or other evidence of criminal conduct secreted on their person.

A subsequent search of the apartment uncovered evidence that the Defendant had committed the crimes with which he was charged. He filed a motion to suppress this evidence, which the trial court granted. The State now appeals.

**Analysis**

"[A] trial court's findings of fact at a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. "We afford to the party prevailing in the trial court the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). However, we review de novo a trial court's application of law to the facts. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution provides that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 1, section 7 of the Tennessee Constitution provides that

the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The United States Supreme Court has explained that, in making a probable cause determination under the Fourth Amendment to the Constitution of the United States, a warrant-issuing judge is to examine "the totality of the circumstances" and "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a

particular place." Illinois v. Gates, 462 U.S. 213, 238-39 (1983). The Tennessee Supreme Court adopted the two-prong test of Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), to test the sufficiency of probable cause for a search warrant under article 1, section 7 of the Tennessee Constitution. State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989).

Before information obtained from a CI can be used to support probable cause, that CI's "basis of knowledge" and "veracity" must be established. Id. at 432. These factors are largely irrelevant in the present case, however, because Det. Wilson's affidavit contains only his personal observations rather than information obtained from his CI. A magistrate may assume an officer's reliability. See State v. Moon, 841 S.W.2d 336, 338 n.1 (Tenn. Crim. App. 1992).

The trial court granted the Defendant's motion to suppress based in part on its view that Det. Wilson's affidavit failed to provide "facts providing a nexus between the crime and the [place] to be searched," as required by our supreme court. State v. Longstreet, 619 S.W.2d 97, 99 (Tenn. 1981). The trial court opined that "nowhere in the affidavit does the affiant allege that information was obtained from the CI to indicate []either that the sale or exchange took place at the . . . place to be searched []or that the CI observed or knew that drugs were located [there]."

Information from the CI, however, was not required to establish a nexus under these circumstances; the affidavit clearly alleges, based on Det. Wilson's own observations, that the CI obtained drugs from inside "5A University Ct.," the place to be searched. As such, we cannot agree with the trial court that the affidavit calls "for mere speculation that the CI received narcotics from inside the residence." The evidence preponderates against this finding. We also note that the affidavit does not specifically allege that the CI purchased the drugs; a common-sense reading of the affidavit supports the conclusion that the CI did, however, given that the CI exited the apartment without the money given to him or her for the purpose of purchasing drugs.

We agree, however, that the affidavit contains no other information about the drug exchange in the residence. It does not, for instance, allege: a quantity of drugs received; the identity of the seller; the identity of the apartment's resident or residents; or the presence of any other persons or things inside the apartment. It does not allege that the seller resided at the apartment. We must therefore decide whether an affidavit alleging only that drugs were bought in a particular apartment up to seventy-two hours beforehand can support a warrant for the search of that apartment and its occupants.

Upon de novo review, we conclude that the trial court did not err in granting the Defendant's motion to suppress. "It is necessary for a finding of probable cause that the time interval between the alleged criminal activity and the issuance of a warrant not be too great." State v. Baron, 659 S.W.2d 811, 814 (Tenn. Crim. App. 1983). "When illegal activity is ongoing, courts have generally held that the affidavit is less likely to become 'stale' with the passage of time." State v. Thomas, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991). Although the affidavit in this case contained information establishing a nexus between the Defendant's apartment and criminal activity, it contained no information tending to establish how long that nexus would persist. It did not, for instance, contain any facts supporting an inference that the person who sold drugs to the CI was more than a one-time visitor to the apartment. Likewise, it did not establish that the CI observed any drugs other than the drugs he bought. Under these circumstances, we must conclude that the information in the affidavit became stale as soon as enough time had passed for such a one-time seller to leave the apartment.

We acknowledge that seventy-two hours is a relatively short period of time, and emphasize that the affidavit in this case would have been sufficient had it contained information reliably establishing ongoing criminal activity. See, e.g., State v. Powell, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000) (in which a CI's reliable claim that there was "more methamphetamine" in the residence from which the CI had purchased drugs supported a search of that residence up to seventy-two hours later); State v. Wanda Booker, No. M2005-02788-CCA-R3-CD, 2006 WL 3498085, at *1 (Tenn. Crim. App., Nashville, Nov. 21, 2006) (in which a CI's reliable claim to have purchased drugs from a defendant in the defendant's residence supported a search of that residence up to ninety-six hours later). Because the affidavit lacks any such information, we agree with the trial court that the magistrate in this case lacked a substantial basis on which to find a fair probability that contraband would be found in the Defendant's apartment seventy-two hours after the CI purchased drugs there. See Gates, 462 U.S. at 238-39. In our view, the State's appeal is without merit.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the trial court's grant of the Defendant's motion to suppress.

_____
DAVID H. WELLES, JUDGE