# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 14, 2012

## STATE OF TENNESSEE v. MICHAEL D. BOONE

**Appeal from the Criminal Court for Davidson County**
**No. 2010-A-266     Steve Dozier, Judge**

---

**No. M2011-02435-CCA-R3-CD - Filed June 10, 2013**

---

CAMILLE R. MCMULLEN, J. concurring.

Because of the great deference afforded to a magistrate judge when making a probable cause determination, I concur with the conclusion reached by the majority in this case. I write separately, however, to express my reluctance in affirming the Defendant's convictions. As an initial matter, there are several concerns with the affidavit. It contained a single introductory statement that the detective "received information that illegal narcotics were at the premises of 1409 Jackson Street." However, it failed to provide the source of this information, the point in time when this information was received by the detective, or any specific details regarding the target residence or the illegal narcotics activity. Nothing in the affidavit established that the confidential informant knew that "John" was engaged in the sale of illegal narcotics from the target residence, that the target residence had been under police surveillance, or that any surveillance had uncovered illegal narcotics activity at or around the target residence. There is simply nothing in the affidavit connecting the confidential informant to the Defendant or the target residence. Finally, the affidavit failed to show any effort by law enforcement to identify the Defendant or establish that the target residence was, in fact, the Defendant's home.

The only direct information provided in the affidavit was that detectives used a confidential informant and told the confidential informant to call "John." The confidential informant complied and arranged a drug transaction with "John." Significantly, the detectives directed the confidential informant to go to the target residence and purchase an unspecified amount of drugs. The affidavit does not provide a time frame between the phone call and the drug transaction and does not state whether the phone number provided to the confidential informant was the Defendant's. Once at the target residence, detectives observed "John" walk out the back door, make contact with the confidential informant, conduct a drug transaction in the confidential informant's car, and then return to the target

residence.  At the motion to suppress hearing, the affiant testified that, prior to obtaining the search warrant, he had conducted two controlled drug purchases with the Defendant from the target residence.  Significantly, neither of these drug purchases was included in the affidavit, and the affiant did not provide an explanation for their omission.

The trial court, relying on State v. Saine, 297 S.W.3d 199, 206 (Tenn. 2009), denied the Defendant's motion to suppress stating "Although there was no direct information that this is the defendant's house, reasonable inferences are allowed as to where a criminal would hide evidence of the crime."  It acknowledged that the affidavit contained no information connecting the Defendant to the target residence.  It then reasoned that the Defendant had "ties" to the target residence because he did not knock at the door upon reentry.  The trial court further distinguished State v. Archibald, 334 S.W.3d 212 (Tenn.Crim.App. 2010), by finding that the affiant's testimony at the suppression hearing "indicate[d] that this [was] not a one time sale."

In Saine, the Tennessee Supreme Court joined a number of other state and federal courts in upholding a probable cause determination based on a reasonable inference that a drug dealer's supply of drugs would be located in the drug dealer's residence.  Saine, 297 S.W.3d at 206 (reversing this court's conclusion, based on State v. Gilbert, No. 01C01-9311-CC-00383, 1995 WL 89697 (Tenn. Crim. App. March 3, 1995), that an affidavit lacked sufficient probable cause).[1]  The affidavit in Saine included information from a confidential informant who had been verified by the affiant to be reliable based on past exposure to narcotics.  Unlike the present case, the confidential informant knew that an individual known to him as "Ced" sold various amounts of cocaine in the Nashville area.  The affiant confirmed that "Ced" was also known as Cedric Saine, the defendant/target.  Within three days of the warrant, a controlled buy was arranged between the confidential informant and "Ced".  Detectives observed a male black (later identified as Cedric Saine) depart from the target residence, arrive at the pre-arranged location, and meet with the confidential informant.  After the meeting, detectives observed "Ced" return to the target residence.  The affiant verified through the Nashville Electric Service database, that the target residence had electric service in the name of Samantha R. Saine.

Because the Saine affidavit did not contain direct information connecting the objects of the search with the defendant's residence, the Court analyzed whether it was reasonable for the magistrate to infer that the items of contraband listed in the detective's affidavit would be located in Saine's residence.  The Court held that Saine's departure from his residence to the prearranged location, the subsequent sale of cocaine to the informant, and return and entry into his residence, along with the detective's experience that drug dealers

---

[1]  In Gilbert, a factually similar case to Saine, this court "rejected a per se rule that if a person is determined by the magistrate to be a drug dealer, probable cause is shown to search that persons residence."  1995 WL 89697 at *5.

ordinarily keep their drugs, the proceeds of drug sales, and financial records related to their business in their residences, constituted sufficient facts upon which the magistrate could reasonably infer that evidence of Saine's drug trafficking would be found inside his residence. Id.

I acknowledge, as pointed out by the majority, that Saine did not expressly adopt a per se rule allowing search warrants based solely on a defendant's status as a drug dealer. However, the authority relied upon in Saine clearly allows a target's status as a known drug dealer to serve as a reasonable basis for a magistrate to infer that evidence of drug trafficking will be found in his home. Saine, 297 S.W.3d at 206 (citing 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7 (d) n. 165 (4th ed. 2004 & 2005); United States v. Miggins, 302 F.3d 384, 393-94 (6th Cir. 2002) (collecting cases and stating, "'[i]n the case of drug dealers, evidence is likely to be found where the dealers live'"); United States v. Kenny, 505 F.3d 458, 461-62 (6th Cir. 2007) (citing United States v. McPhearson, 469 F.3d 518, 526 (6th Cir. 2006) and noting long line of precedent permitting "the inference that a drug dealer keeps evidence of wrongdoing in his residence [if] . . . the affidavit had 'the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes.'"). Notably, the only material difference between the affidavit in Saine and the affidavit in the instant case is that Saine was identified by the confidential informant as a known drug dealer. Because there was no such information provided in the affidavit in this case, there was no basis for the magistrate judge to infer that drugs were being stored at the target residence.

The majority, in affirming the trial court, relies upon State v. Linda Kay Batts, No. W2006-00419-CCA-R3-CD, 2007 WL 1015444, at *9 (Tenn. Crim. App., Apr. 4, 2007) and Allen Jean Stephens v. State, No. W2006-02773-CCA-R3-PC, 2007 WL 2872368, at *5 (Tenn. Crim. App., July 10, 2007), for the proposition that "a single drug sale is a crime and can establish probable cause for obtaining a search warrant." These cases are inapplicable. Instead of challenging the nexus required for the search, each of these cases examine the veracity and basis of the confidential informant's knowledge under Aguilar-Spinelli.[2] Ultimately, each case concluded that any deficiency in the informant's veracity or basis of knowledge was cured by independent police corroboration. In the case sub judice, however, probable cause was not based upon any information provided by a confidential informant. Rather, the problem with the instant affidavit is that it fails to provide a basis upon which the magistrate could reasonably infer that drugs would be located inside the target residence.

---

[2] Under Aguillar-Spinelli, "When probable cause for a search is based upon information from a confidential informant, there must be a showing in the affidavit of both (1) the informant's basis of knowledge and (2) his or her veracity." State v. Jacumin, 778 S.W.2d 430, 436 (Tenn.1989).

The majority further emphasizes that the magistrate judge could reasonably infer that drugs would be located inside the target residence based on the officer's personal observation of the Defendant exiting the back door and freely returning to the target residence after the drug transaction. While this may indeed be true, it is contrary to this court's holding in State v. Archibald, 334 S.W.3d 212 (Tenn. Crim. App. 2010), because there was only one such observation included in the affidavit.

In Archibald, this court stated, "'It is necessary for a finding of probable cause that the time interval between the alleged criminal activity and the issuance of a warrant not be too great.'" Archibald, 334 S.W.3d at 215 (quoting State v. Baron, 659 S.W.2d 811, 814 (Tenn. Crim. App. 1983)). "'When illegal activity is ongoing, courts have generally held that the affidavit is less likely to become 'stale' with the passage of time.'" Id. (quoting State v. Thomas, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991)). "In making this determination, courts should consider whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct. Courts also should consider the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence." State v. Hayes, 337 S.W.3d 235, 257 (Tenn. Crim. App. 2010) (citations omitted)(emphasis added).

Similar to the instant case, the affidavit in Archibald involved a single controlled drug purchase. However, the confidential informant actually entered the target address to purchase the drugs, and as pointed out by the majority, established a nexus between the target residence and the criminal activity. The drug transaction was monitored by law enforcement. Within seventy-two hours of this buy, a search warrant was issued and executed for the target residence. Based on the above authority, we concluded that the affidavit was stale:

> Although the affidavit in this case contained information establishing a nexus between the Defendant's apartment and criminal activity, it contained no information tending to establish how long that nexus would persist. It did not, for instance, contain any facts supporting an inference that the person who sold drugs to the CI was more than a one-time visitor to the apartment. Likewise, it did not establish that the CI observed any drugs other than the drugs he bought. Under these circumstances, we must conclude that the information in the affidavit became stale as soon as enough time had passed for such a one-time seller to leave the apartment.

Id. at 215-16. In the instant case, there were no facts in the affidavit supporting an inference that the Defendant was more than a one-time social guest at the target residence. Consistent with Archibald, the information within the affidavit became stale as soon as enough time had passed for the Defendant to leave.

4

Given the aforementioned concerns, I acknowledge the great deference afforded to the magistrate judge when making a probable cause determination. Based on this consideration, I concur.


_____
CAMILLE R. McMULLEN, JUDGE