# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 19, 2016 Session

## STATE OF TENNESSEE v. THOMAS BRADEN

**Appeal from the Circuit Court for Maury County**
**No. 23892    Robert L. Jones, Judge**

---

### No. M2015-00991-CCA-R3-CD – Filed May 2, 2017

---

The Appellee, Thomas Braden, was indicted for possession of cocaine, possession of marijuana, and possession of Alprazolam, all misdemeanors.  He filed a motion to suppress the evidence, arguing that the affidavit in support of the search warrant for the home in which the drugs were found was defective because it failed to establish ongoing criminal activity at the residence, and the Maury County Circuit Court granted the motion.  The State appealed to this court, and we concluded that the trial court properly granted the motion to suppress.   The Tennessee Supreme Court granted the State's application for permission to appeal and remanded the case to this court for reconsideration in light of the court's recent opinion in State v. Jerry Lewis Tuttle, ___ S.W.3d ___, M2014-00566-CCA-R3-CD, 2015 WL 5812945 (Tenn. Apr. 5, 2017), which overruled State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989), and adopted a totality-of-the-circumstances analysis for determining whether an affidavit establishes probable cause for issuance of a search warrant.  Upon reconsideration, we again conclude that the trial court properly granted the motion to suppress.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Brent Cooper, District Attorney General; and Patrick Powell, Assistant District Attorney General, for the appellant, State of Tennessee.

Lee E. Brooks, Spring Hill, Tennessee, for the appellee, Thomas Braden.

## OPINION

# I.  Factual Background

On June 8, 2013, Investigator Jeff Seagroves of the Columbia Police Department submitted an affidavit in which he provided the following information in support of issuance of a search warrant:

> John and/or Jane Doe . . . is/are in possession of the following described property, namely:  Crack cocaine, crack cocaine paraphernalia, proceeds from the sale of crack cocaine.  [T]o be searched for in accordance with the Laws of the State of Tennessee, upon the following described premises, namely[:]
>
> 509 White Street, Columbia, Tennessee 38401, being a single family dwelling.  This residence's exterior is made of tan colored vinyl siding with white trim.  The front door to the residence is metal and cream in color.  This residence has a covered front porch with the number 509 clearly displayed on the front porch pillar just to the right of the front door.  This warrant is to include any and all outbuildings, vehicles, and yard belonging to or under control of this location and/or John or Jane Doe. . . . [A]nd his/her reasons for such belief are that affiant has been contacted by a cooperating individual stating they could purchase crack cocaine from inside the residence located at 509 White Street, Columbia, Tennessee.  The cooperating individual was met by this affiant and they were interviewed about them purchasing crack cocaine from this residence.  The cooperating individual advised they could go to the residence, walk inside and purchase crack cocaine.  The cooperating individual stated they know the people that live at the residence are selling crack cocaine.
>
> The cooperating individual was searched for any narcotics, paraphernalia, or currency, with none being found.  The cooperating individual was provided with an electronic listening device along with photo copied money to purchase the crack cocaine.  Sgt. John Ussery, Lt. James Shannon and this affiant rode together monitoring the informant to an area near White Street.  This affiant did watch the cooperating individual park [in front] of 509 White Street.  This affiant heard, via electronic listening device, the cooperating

individual, enter into the residence, and have a conversation with both a male and female subject. The conversation between the cooperating individual and the subjects was consistent with a drug transaction. The cooperating individual was then heard exiting the residence, and seen by this affiant leaving from the roadway [in front] of the residence located at 509 White Street. The cooperating individual was met at a predetermined location where this affiant recovered the purchased product and electronic equipment. This affiant did field test the purchased product with Valtox and the field test did show the product to be positive for having a cocaine base.

A post buy interview with the cooperating individual was performed. The cooperating individual stated they went to the residence located at 509 White Street and after entering the residence they purchased crack cocaine from an unknown black male. The informant stated that after the purchase they left the residence and met this affiant. The cooperating individual was driven by and did point out and confirm that 509 White Street as the residence they purchased the crack from.

Due to this affiants experience and training, it is known for people selling and storing drugs, to hide both narcotics, and proceeds from the sale of narcotics, in out buildings, yard, and vehicles in an attempt to keep police and others from finding it during the search of their homes.

The above facts did occur within . . . the last 72 hours.

Based on the information contained in the affidavit, a magistrate issued a search warrant. The warrant was executed on June 13, 2014, and the Appellee was present during the search. In December 2014, the Maury County Grand Jury indicted the Appellee for misdemeanor possession of cocaine, misdemeanor possession of marijuana, and misdemeanor possession of Alprazolam.

The Appellee filed a motion to suppress the drugs found in the residence on the basis that the affidavit in support of the search warrant failed to establish ongoing criminal activity at the home and, therefore, failed to establish probable cause. In support of his argument, the Appellee relied on State v. Archibald, 334 S.W.3d 212 (Tenn. Crim.

App. 2010), and State v. Gregory Lamont Hall, M2013-02841-CCA-R3-CD, 2014 WL 4952989 (Tenn. Crim. App. at Nashville, Oct. 3, 2014).

At a hearing on the motion, the only evidence presented was the search warrant and the affidavit in question. Counsel for the Appellee argued that the affidavit "lin[ed] up almost to the letter as far as language" with the affidavits in Archibald and Gregory Lamont Hall in which this court found that the affidavits were defective. Counsel also argued that the affidavit failed to establish the cooperating individual's basis of knowledge and veracity. The State argued that unlike the affidavits in Archibald and Gregory Lamont Hall, the affidavit in this case was not "bare-bones" in that Investigator Seagroves stated that the cooperating individual knew the residents of the home to be selling crack cocaine, that multiple individuals were heard on the listening device during the transaction, and that the officer conducted a post-buy interview with the cooperating individual. Defense counsel responded, "We have a one-time sale. And no evidence at all about the person who made the sale as far as whether or not he lives there or whether he's a visitor there on his way out the door."

In a written order, the court found that the affidavit "provide[d] the nexus between criminal activity and the target house." However, the court concluded that the affidavit failed to show "that the cocaine was obtained from a known person regularly in the house or that any other cocaine remained in the house when the warrant was sought." The court stated that it was unable to distinguish this case from Archibald and Gregory Lamont Hall and, therefore, that it was obligated to grant the Appellee's motion to suppress. Given that the State's case consisted of the drugs found during the search, the court also dismissed the indictment.

## II. Analysis

The State contends that the trial court erred by granting the motion to suppress because the court improperly concluded that the affidavit failed to show evidence of ongoing drug activity at the house. The State contends that the court applied Archibald and Gregory Lamont Hall "too broadly" and that the affidavit demonstrated the existence of ongoing activity at the home. In the alternative, the State argues that if this court concludes that the trial court properly applied Archibald, then we should overrule or modify that decision. The Appellee claims that the trial court properly granted his motion. We agree with the State that the affidavit in this case is distinguishable from those in Archibald and Gregory Lamont Hall. Nevertheless, we conclude that the trial court properly granted the motion to suppress.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and

- 4 -

resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review both questions of law and the trial court's application of law to the facts purely de novo. See State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009); State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Our supreme court has explained that

> [t]he Fourth Amendment to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause. Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act.

State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998) (footnote and citations omitted). In this state, "a finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit." Id. In order to establish probable cause, the affidavit "must show a nexus among the criminal activity, the place to be searched, and the items to be seized." State v. Saine, 297 S.W.3d 199, 206 (Tenn. 2009) (citing State v. Reid, 91 S.W.3d 247, 273 (Tenn. 2002)). To determine whether the nexus has been sufficiently established, we should "'consider whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence.'" Saine, 297 S.W.3d at 206 (quoting Reid, 91 S.W.3d at 275). "[A]n affidavit seeking issuance of a search warrant need not implicate a particular person in the crime under investigation." Tuttle, No. M2014-00566-SC-R11-CD, 2017 WL 1246855, at *10. We note that "'affidavits must be looked at and read in a commonsense and practical manner', and . . . the finding of probable cause by the issuing magistrate is entitled to great deference." State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989) (quoting State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982)).

In <u>Archibald</u>, the affidavit submitted in support of issuance of the search warrant described a one-time purchase of narcotics by a confidential informant (CI) from someone in an apartment. <u>See</u> 334 S.W.3d at 213-14. The affidavit provided no other information about the CI except that "[t]he CI has been used in the past for the successful recovery of illegal narcotics as well as the successful prosecution of such offenses." <u>Id.</u> at 214. In determining whether the trial court properly granted the defendant's motion to suppress evidence, this court described the issue as "whether an affidavit alleging only that drugs were bought in a particular apartment up to seventy-two hours beforehand can support a warrant for the search of that apartment and its occupants." <u>Id.</u> at 215. This court went on to conclude that although the affidavit contained information establishing a nexus between the defendant's apartment and the criminal activity, it did not contain any information to establish how long that nexus would persist. <u>Id.</u> For example,

> [i]t did not . . . contain any facts supporting an inference that the person who sold drugs to the CI was more than a one-time visitor to the apartment. Likewise, it did not establish that the CI observed any drugs other than the drugs he bought. Under these circumstances, we must conclude that the information in the affidavit became stale as soon as enough time had passed for such a one-time seller to leave the apartment.

<u>Id.</u> at 215-16. The court noted, though, that the affidavit would have established probable cause if it had contained reliable information from the CI to show ongoing criminal activity. <u>Id.</u> at 216.

In <u>Gregory Lamont Hall</u>, the affiant stated in the affidavit that he had received information that drugs were being sold at the target residence. M2013-02841-CCA-R3-CD, 2014 WL 4952989, at *1. Like the affidavit in <u>Archibald</u>, the affidavit in <u>Gregory Lamont Hall</u> "described [a] CI entering the apartment and then 'momentarily' exiting the apartment after making a controlled buy." <u>Id.</u> at *4. It also stated that the CI had provided information in the past that had led to the recovery of illegal drugs. <u>Id.</u> at *2. As this court explained,

> The affidavit did not reveal the quantity of drugs received, the identity of the seller, the identity of the target location's residents, or whether the seller was a resident of the target location. Likewise, the affidavit did not establish that the seller "was more than a one-time visitor to the apartment" or that the CI observed other drugs inside the residence. <u>Archibald</u>, 334 S.W.3d at 215.

Id. In <u>Gregory Lamont Hall</u>, the State tried to distinguish the affidavit from that in <u>Archibald</u> by arguing that the affidavit reliably established ongoing criminal activity at the target residence. <u>Id.</u> Specifically, the affidavit stated at the beginning that it "was based upon either the 'affiant's personal knowledge, upon information received from other law enforcement officers, or upon information obtained from other sources as noted' and [the affiant's] statement that he had 'received information that illegal narcotics were being sold at' the target residence." <u>Id.</u> However, this court rejected the State's argument, concluding that the affiant police officer's statement that drugs were being sold at the residence was merely a conclusory allegation and could not reliably establish ongoing criminal activity at the home. <u>Id.</u>

Like <u>Archibald</u> and <u>Gregory Lamont Hall</u>, the affidavit in the instant case involved the one-time sale of narcotics. However, we agree with the State that the affidavit here is distinguishable from those in the previous cases. First, unlike the affidavit in <u>Archibald</u>, the affidavit in this case attempted to establish ongoing criminal activity by stating that the cooperating individual knew the people living in the home were selling crack cocaine. Moreover, unlike the affidavit in <u>Gregory Lamont Hall</u>, said statement was made to show that the cooperating individual had personal knowledge of the ongoing criminal activity, and therefore, was more than a mere conclusory allegation by the affiant.

The State contended at oral argument that the cooperating individual's personal knowledge of the ongoing criminal activity at the target residence, combined with law enforcement's "extra step" of sending the cooperating individual into the home to confirm the cooperating individual's claim, took the need to establish the informant's basis of knowledge and veracity "out of the equation." In our previous opinion, we said the State's argument disregarded <u>Jacumin</u>, in which our supreme court espoused the two-pronged <u>Aguilar-Spinelli</u> test "as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article I, Section 7 of the Tennessee Constitution." <u>Jacumin</u>, 778 S.W.2d at 436; <u>see</u> <u>Spinelli v. United States</u>, 393 U.S. 410 (1969); <u>Aguilar v. Texas</u>, 378 U.S. 108 (1964). Specifically, "hearsay information supplied by a confidential informant can not support a finding of probable cause unless it also contains factual information concerning the informant's basis of knowledge and credibility." <u>Henning</u>, 975 S.W.2d at 294-95 (citing <u>Jacumin</u>, 778 S.W.2d at 432, 436). We then noted that the two-pronged <u>Aguillar-Spinelli</u> test was required if the hearsay information was being supplied by a criminal informant or a person from a "criminal milieu," <u>State v. Smotherman</u>, 201 S.W.3d 657, 662 (Tenn. 2006), and that the cooperating individual in this case apparently was a criminal informant. We concluded that because the affidavit in the present case failed to provide any basis of knowledge and veracity for the cooperating individual's claim that the residents were conducting ongoing drug sales from the home, the cooperating individual's information was not reliable. Accordingly, as in <u>Archibald</u>, we held that the

affidavit failed to show how long the nexus between the drug dealing and the residence would exist and, therefore, failed to establish probable cause for issuance of the search warrant.

Recently, though, our supreme court announced that it was abandoning the "rigid" Aguillar-Spinelli test adopted in Jacumin and adopting a totality-of-the-circumstances analysis for determining whether an affidavit establishes probable cause for issuance of a search warrant. Tuttle, M2014-00566-CCA-R3-CD, 2015 WL 5812945, at *15. However, in doing so, our supreme court did not take the informant's basis of knowledge and veracity "out of the equation." As the court explained,

> We reiterate that, under the totality-of-the-circumstances analysis, the informant's basis of knowledge and veracity or credibility remain highly relevant considerations. Rather than separate and independent considerations, they "should [now] be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place."

Id. (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)). Relevant to this case, the court went on to conclude that the fifty-two-paragraph affidavit in Tuttle established ongoing drug trafficking at the residence in question, noting as an example that the affidavit quoted portions of a recent conversation in which the suspected traffickers discussed a shortage in the amount of marijuana received and a monetary credit for the shortage in future marijuana shipments. Id. at *5, 17.

Turning to the instant case, we must again conclude that the trial court properly granted the Appellee's motion to suppress. The affidavit stated that the cooperating individual had personal knowledge of ongoing cocaine sales at the target residence, but it failed to provide any basis of knowledge and veracity for the individual's reliability, which is a relevant consideration in the totality-of-the-circumstances test. Moreover, the fact remains that law enforcement conducted only one controlled drug-buy from the home. Although the affiant heard a conversation consistent with a drug transaction during the buy, the conversation contained no information regarding past or future transactions. Thus, as in Archibald, we conclude that the affidavit failed to show how long the nexus between the drug dealing and the residence would exist. In sum, even under the totality-of-the-circumstances test, we must conclude that the affidavit in this case failed to establish ongoing criminal activity in the residence and, therefore, failed to establish probable cause.

The State contends that we should adopt the Sixth Circuit Court of Appeals' analysis in United States v. Archibald, 685 F.3d 553, 558 (6th Cir. 2012), and modify or overrule State v. Archibald. In support of its argument, the State claims that "the Sixth Circuit, considering the same Defendant and warrant as this court in State v. Archibald, concluded that the warrant was supported by probable cause. . . . Specifically, the Court concluded [under the totality-of-the-circumstances analysis] 'that a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location.'" Archibald, 685 F.3d at 558. However, the State's claim is misleading in that the Sixth Circuit actually stated as follows:

> The affidavit states that the informant had been used in past investigations and prosecutions, and although the details regarding the informant were sparse, that information combined with the information regarding the officers' corroboration of the purchase, makes the affidavit sufficient to allow the issuing judge to conclude that the veracity and reliability of the informant supported probable cause.

Id. at 557. Such is not the case here. Instead, the issue before us is whether an affidavit alleging only that drugs were bought in a particular residence up to seventy-two hours beforehand can support a warrant for the search of that residence and its occupants. To that end, State v. Archibald, which is a published opinion and does not conflict with Tuttle, says no. Accordingly, it is controlling authority. See Tenn. Sup. Ct. R. 4(G)(2).

### III.  Conclusion

Based upon our reconsideration of the oral arguments, the record, and the parties' briefs, we conclude that the trial court properly granted the Appellee's motion to suppress. Hence, the Appellant is not entitled to relief.

_____
NORMA MCGEE OGLE, JUDGE