IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 14, 2019

**STATE OF TENNESSEE v. JEFFREY WAYNE HAITHCOTE**

**Appeal from the Circuit Court for Bedford County**
**No. 18542     Forest A. Durard, Jr., Judge**

_____

**No. M2018-01943-CCA-R3-CD**

_____

The Appellant, Jeffrey Wayne Haithcote, pled guilty in the Bedford County Circuit Court to two counts of selling heroin and one count of possessing heroin with intent to sell, Class B felonies.  As a condition of his pleas, he reserved certified questions of law concerning whether the trial court erred by denying his motion to suppress the search of his residence because the affidavit underlying the search warrant did not establish probable cause.  Upon review, we affirm the trial court's denial of the motion to suppress.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Roger Clay Parker, Shelbyville, Tennessee (at plea hearing and on appeal), and M. Wesley Hall, IV, Unionville, Tennessee (at suppression hearing), for the Appellant, Jeffrey Wayne Haithcote.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Robert James Carter, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

This case relates to drug buys conducted by the 17th Judicial District Drug Task Force (DTF) on March 24 and March 29, 2016.  During the buys, a confidential informant (CI) bought heroin from James Woods.  The Appellant supplied the heroin to Woods.

After the first buy on March 24, DTF Agent Shane George prepared an affidavit in support of a search warrant and obtained a search warrant for the Appellant's home. Although the search warrant was issued on March 24, the DTF did not execute the warrant until March 29. Prior to executing the warrant, though, the CI made the second controlled buy of heroin from Woods. The DTF then executed the warrant and found drug evidence in the Appellant's residence.

In April 2017, the Bedford County Grand Jury returned a multi-count indictment against the Appellant, charging him with two counts of selling heroin, two counts of delivering heroin, two counts of conspiracy to sell or deliver heroin, one count of possession of heroin with intent to sell, one count of possession of heroin with intent to deliver, and one count of possession of drug paraphernalia. The Appellant filed a motion to suppress the evidence, asserting that the search warrant failed to establish probable cause because "the statements of the CI are rendered unreliable due to ingestion of Heroin by the CI while under the direction of the 17th Judicial Drug Task Force." The Appellant also asserted that the affidavit failed to establish the CI's credibility because the affidavit simply provided that the CI had made controlled buys previously for the DTF. In addition to the motion to suppress, the Appellant filed a motion to sever the March 24 offenses from the March 29 offenses.

The trial court held a joint hearing on the two motions. First, the trial court addressed the Appellant's motion to suppress. Defense counsel stated that there would be no proof on the motion except for the affidavit filed in support of the search warrant. The trial court noted that the Appellant's motion to suppress was "somewhat limited to the four corners of the document."

The March 24 affidavit was admitted into evidence. In the affidavit, Agent George requested to search the Appellant's home at 2372 Highway 64 East in Shelbyville for "Heroin and Confidential Funds used to purchase heroin from [the Appellant]." He then explained as follows: Earlier that day, the CI told Agent George that James Woods, who lived on Forrest Avenue, was involved in the illegal distribution of heroin and prescription medication. The CI told the agent that he could buy four thirty-milligram Roxicet pills from Woods for $140. The CI agreed to make a controlled buy from Woods and met Agent George, Assistant Director Tim Miller, and Agent Joe Ramirez at a prearranged location. Prior to the buy, Agent Ramirez searched the CI and his vehicle and found no contraband. Agent George gave the CI $140 in "prerecorded confidential funds" to make the buy and equipped the CI with electronic devices to allow the agents to monitor and record the buy. Agents George and Ramirez followed the CI and saw him enter the back door of Woods' residence. Approximately ten to fifteen minutes later, the agents followed the CI as he left the residence and drove back to the prearranged location. The CI gave the agents four Roxicet pills and the recording devices. The CI told Agent George that he purchased the

pills from Woods using the $140 given to him by the agents. The CI also told the agents that while he was inside Woods' residence, he had seen a small amount of heroin in Woods' possession and that he had used a small portion of the heroin with Woods. The agents searched the CI and did not find any contraband or money. The CI told the agents that Woods had offered to sell him one-half gram of heroin for $150 or one gram of heroin for $300. Agent George decided to send the CI back to Woods' residence to buy one-half gram of heroin. He gave the CI $150 in prerecorded bills and equipped the CI with the recording and monitoring devices.

The affidavit stated that the agents followed the CI to Woods' residence and watched the CI enter the residence through the back door. After several minutes, Assistant Director Miller and Agent George saw a 1998 Ford F-150 XLT truck arrive. The truck, which was driven by a white male, remained in Woods' driveway for about five minutes and left. Agent Ramirez followed the truck and recorded the license plate. He learned the truck was registered to the Appellant at 2372 Highway 64 East. Assistant Director Miller and Agent George saw the CI and Woods exit Woods' residence, get into the CI's vehicle, and drive away from the residence. "The CI informed [Agent George] that Woods was going to his sources [sic] residence" to get the heroin. The agents followed the CI and Woods to the Appellant's residence. Ten to fifteen minutes later, Agent George watched the CI and Woods leave the Appellant's residence. The agents followed the CI and Woods. They watched as Woods got out of the vehicle at his residence, and the CI left. The agents followed the CI to the prearranged location. The CI gave Agent George the recording devices and a plastic bag containing "suspected Heroin."

According to the affidavit, the CI told the agents that when the CI arrived at Woods' residence, Woods weighed the heroin he had in his possession. Woods then "told the CI that he didn't want to get rid of the rest of his stuff and decided to call his source." Woods telephoned the source in front of the CI and placed an order. The CI heard the source tell Woods that the source was in Woods' driveway. Woods initially thought the source was "kidding" but eventually realized the source had been at Woods' house. Woods arranged to go to the source's residence and then directed the CI to drive him to 2372 Highway 64 East. The CI gave Woods $150, and Woods met with the driver of the Ford F-150. "The CI positively identified the driver of the 1998 Ford F-150 and the person the CI saw Woods meet with as [the Appellant]." Agent George searched the CI but found no contraband or money. The affidavit stated that the CI had made controlled buys of cocaine, prescription pills, and heroin previously for the DTF.

The trial court took the motion to suppress under advisement and turned to the Appellant's motion to sever the offenses. Agent George testified briefly about the heroin buy on March 24. He then testified about the heroin buy on March 29. Agent George explained that on March 29, the CI went to Woods' residence to buy one gram of heroin

for $300. The CI stayed at Woods' residence to watch Woods' children, and Woods left in the CI's vehicle. Agents, who were surveilling the Appellant's residence, saw Woods arrive in the CI's vehicle. Woods met with the Appellant in the driveway, and they went inside the Appellant's residence. Woods came outside, got into the CI's vehicle, returned home, and gave the drugs to the CI. The CI left Woods' residence and met with the DTF agents. The CI gave the agents the substance he obtained from Woods. Testing revealed the substance was .72 grams of heroin.

After the heroin buy on March 29, the DTF agents executed the search warrant that had been issued on March 24. During their search of the Appellant's home, they found 3.65 grams of heroin, digital scales, baggies, and $830. The agents found $40 from the March 24 heroin buy in a jacket in the residence and the $300 for the March 29 heroin buy in the Appellant's pocket.

The trial court filed an order denying the Appellant's motion to suppress. In the order, the trial court said that the Appellant appeared to be arguing that the State failed to satisfy "the former 2 prong [Aguilar-Spinelli] test set forth in [State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989),] regarding" the CI's basis of knowledge and reliability. The trial court noted that in State v. Tuttle, 515 S.W.3d 282, 308 (Tenn. 2017), our supreme court abandoned the test espoused in Jacumin and adopted the totality of the circumstances review explained by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983).

The trial court stated that it could only consider the information contained in the affidavit in determining whether the State established probable cause for the search warrant. The trial court noted that the affidavit reflected that the CI's actions had been monitored by the DTF agents. After purchasing pills from Woods, the CI told DTF agents that he had used heroin with Woods. Thereafter, the CI returned to Woods' residence to buy heroin from Woods. The agents saw a truck arrive in Woods' driveway and soon depart. Meanwhile, Woods placed a telephone call to his source, and the CI overheard the source say that he was in the driveway. The DTF confirmed that the Appellant owned the truck and confirmed the address for the truck. The DTF agents followed the CI and Woods to the Appellant's address. While there, Woods obtained heroin from the Appellant. The CI identified the Appellant as the "source" the CI saw meet with Woods. The trial court said:

> While this involved a single buy from the residence of the [Appellant], the same is but one of many factors to consider. Given the very close proximity in time and the very closely monitored surveillance by DTF, a common sense, nontechnical approach and practical reading of the affidavit

- 4 -

would lead one to believe there were probably drugs at the [Appellant's] house based on the facts contained in the affidavit.

The Appellant agreed to plead guilty to two counts of selling heroin and one count of possessing heroin with the intent to sell, and he accepted concurrent sentences of twelve years at thirty-five percent release eligibility for each conviction. As a condition of his pleas, the Appellant reserved the following certified questions of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2):

1.    Whether the court properly determined that the [Appellant's] Motion to Suppress was determined by the entirety of the circumstances under [Tuttle] or should have been determined under the [Aguilar-Spinelli] two prong test.

2.    Whether the trial court properly determined information as to the credibility and veracity of the CI in the affidavit in support of the search warrant was correct.

3.    Whether the nexus of activity at the Woods home and the conduct of the Confidential Informant [were too] remote to establish probable cause to obtain a search warrant and an arrest warrant of the [Appellant].

## II.  Analysis

The Appellant properly reserved his certified questions in accordance with the requirements of State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988), and Tennessee Rule of Criminal Procedure 37(b)(2)(A).  However, in his appellate brief, he states that he "wishes to abandon" his first certified question.  Therefore, we will only consider his latter two questions.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).  Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id.  Nevertheless, appellate courts will review both questions of law and the trial court's application of law to the facts purely de novo.  See State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009); State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).  Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced

at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Initially, we note that the Appellant contends that in ruling on his motion to suppress, the trial court made "several observations that with all due respect to the court are either outright wrong or is information not testified to in the Suppression hearing." The Appellant asserts that Agent George was the only witness to testify at the suppression hearing and that the March 29 events "seemed to be what the court and the District Attorney focused on." However, Agent George testified during the portion of the hearing that dealt with the Appellant's severance motion; he did not testify in relation to the suppression motion. Defense counsel even advised the trial court that the parties would not be presenting any proof on the motion to suppress and would be relying on the information contained in the affidavit. The trial court said in its order denying the suppression motion that it had considered only the information contained in the affidavit. Our supreme court has stated that "[t]he probable cause necessary for issuance of a search warrant must be based upon evidence appearing in a written and sworn affidavit." State v. Carter, 160 S.W.3d 526, 533 (Tenn. 2005) (citing Jacumin, 778 S.W.2d at 432). Therefore, the trial court properly considered only the affidavit in ruling on the Appellant's motion to suppress.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures. Our supreme court has stated that

> [t]he Fourth Amendment to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause. Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act.

State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998) (footnote and citations omitted).

"[A] finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit." Id. In examining the affidavit, this court's standard of review is limited to whether the issuing magistrate had "'a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing.'" Tuttle, 515 S.W.3d at 299 (quoting Jacumin, 778 S.W.2d at 432). We note that "'affidavits must be looked at and read in a commonsense and practical manner', and

. . . the finding of probable cause by the issuing magistrate is entitled to great deference." State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989) (quoting State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982)).

The first question at issue is "[w]hether the trial court properly determined that the information as to the credibility and veracity of the C.I. in the affidavit supporting the search warrant was correct." Previously, this State utilized the two-pronged Aguilar-Spinelli test "as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article I, Section 7 of the Tennessee Constitution." Jacumin, 778 S.W.2d at 436; see Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). The two-pronged Aguilar-Spinelli test was required if the hearsay information was being supplied by a criminal informant or a person from a "criminal milieu." State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006). Specifically, "hearsay information supplied by a confidential informant [could] not support a finding of probable cause unless it also contain[ed] factual information concerning the informant's basis of knowledge and credibility." Henning, 975 S.W.2d at 294-95 (citing Jacumin, 778 S.W.2d at 432, 436).

"[U]nder the . . . 'basis of knowledge' prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information or claim regarding criminal conduct." State v. Lowe, 949 S.W.2d 300, 304 (Tenn. Crim. App. 1996); see also State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). The reliability, veracity, or credibility prong deals with the truthfulness of the informant in which "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." Moon, 841 S.W.2d at 338. Courts have stressed that conclusory statements absent supportive detail will not suffice to establish these requirements. See id. at 339. However, "independent police corroboration of the information provided by the informant may make up deficiencies in either prong." State v. Powell, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000). "The requisite volume or detail of information needed to establish the informant's credibility is not particularly great." Lowe, 949 S.W.2d at 305. Nevertheless, "the affiant must provide some concrete reason why the magistrate should believe the informant." Id.

At the time of the Appellant's motion to suppress, our supreme court had abandoned the "rigid" Aguilar-Spinelli test adopted in Jacumin and adopted a totality of the circumstances analysis for determining whether an affidavit establishes probable cause for issuance of a search warrant. Tuttle, 515 S.W.3d at 307-08. Nevertheless, in doing so, our supreme court did not take the informant's basis of knowledge and veracity "out of the equation." As the court explained:

We reiterate that, under the totality-of-the-circumstances analysis, the informant's basis of knowledge and veracity or credibility remain highly relevant considerations. Rather than separate and independent considerations, they "should [now] be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place."

Id. (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)).

The Appellant acknowledges on appeal that the Aguilar-Spinelli test is no longer viable but contends that under the totality-of-the-circumstances analysis adopted by Tuttle, "the informant's basis of knowledge and veracity or credibility remain highly relevant considerations." The Appellant asserts that "[u]nder this analysis, bare-bones affidavits containing only conclusory statements remain insufficient and independent police corroboration of the details provided by the informant continue to add value to the affidavit." He also contends that the CI was not reliable because the CI used heroin with Woods and was under the influence of the drug prior to buying heroin from Woods.

Here, the affidavit provided a conclusory statement that the CI had been used on prior occasions. However, the police also independently corroborated much of the information that the CI provided to the police. For example, prior to the heroin buy on March 24, which was the basis for obtaining the search warrant, the CI claimed that he could buy four Roxicet pills from Woods for $140. The DTF set up the controlled buy for Roxicet, and the CI bought the four pills from Woods for $140. Moreover, after the CI bought heroin from Woods on March 24, the CI explained what had occurred in Woods' house. Specifically, the CI told the DTF agents that Woods had telephoned his source and that the source claimed to be in Woods' driveway. The source's presence at Woods' home was verified by the DTF agents, who saw the Appellant's truck pull into Woods' driveway. Therefore, the affidavit established a basis of knowledge and veracity for the CI.

Although the Appellant claims that the CI was not reliable because the CI used heroin with Woods prior to the March 24 heroin buy, the CI told the DTF agents that he used a "small" amount of heroin with Woods. Agent George sent the CI back to Woods' residence to buy one-half gram of heroin, and the CI not only drove to and from Woods' home, he also drove Woods to and from the Appellant's home. After the heroin buy, the CI gave a detailed account of the drug buy, and the police were able to verify much of his information. In sum, nothing indicates that the CI was under the influence of heroin when he bought heroin from Woods on March 24.

The next question at issue concerns "[w]hether the nexus of activity at the Woods home and the conduct of the Confidential Informant [are too] remote to establish probable cause to obtain a search warrant and an arrest warrant of the [Appellant]." In order to establish probable cause, the affidavit "must show a nexus among the criminal activity, the place to be searched, and the items to be seized." State v. Saine, 297 S.W.3d 199, 206 (Tenn. 2009) (citing State v. Reid, 91 S.W.3d 247, 273 (Tenn. 2002)). To determine whether the nexus has been sufficiently established, we should "'consider whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence.'" Saine, 297 S.W.3d at 206 (quoting Reid, 91 S.W.3d at 275).

In support of his argument that a nexus did not exist, the Appellant relies on State v. Archibald, 334 S.W.3d 212 (Tenn. Crim. App. 2010), and State v. George Lamont Hall, No. M2013-02841-CCA-R3-CD, 2014 WL 4952989 (Tenn. Crim. App. at Nashville, Oct. 3, 2014). In Archibald, the affidavit submitted in support of issuance of the search warrant described a one-time purchase of narcotics by a CI from someone in an apartment. 334 S.W.3d at 213-14. The affidavit provided no other information about the CI except that "[t]he CI has been used in the past for the successful recovery of illegal narcotics as well as the successful prosecution of such offenses." Id. at 214. In determining whether the trial court properly granted the defendant's motion to suppress evidence, this court described the issue as "whether an affidavit alleging only that drugs were bought in a particular apartment up to seventy-two hours beforehand can support a warrant for the search of that apartment and its occupants." Id. at 215. This court went on to conclude that although the affidavit contained information establishing a nexus between the defendant's apartment and the criminal activity, it did not contain any information to establish how long that nexus would persist. Id. For example,

> [i]t did not . . . contain any facts supporting an inference that the person who sold drugs to the CI was more than a one-time visitor to the apartment. Likewise, it did not establish that the CI observed any drugs other than the drugs he bought. Under these circumstances, we must conclude that the information in the affidavit became stale as soon as enough time had passed for such a one-time seller to leave the apartment.

Id. at 215-16. The court noted, though, that the affidavit would have established probable cause if it had contained reliable information from the CI to show ongoing criminal activity. Id. at 216.

In Gregory Lamont Hall, the affiant stated in the affidavit that he had received information that drugs were being sold at the target residence. No. M2013-02841-CCA-R3-CD, 2014 WL 4952989, at *1. Like the affidavit in Archibald, the affidavit in Gregory Lamont Hall "described [a] CI entering the apartment and then 'momentarily' exiting the apartment after making a controlled buy." Id. at *4. It also stated that the CI had provided information in the past that had led to the recovery of illegal drugs. Id. at *2. As this court explained:

> The affidavit did not reveal the quantity of drugs received, the identity of the seller, the identity of the target location's residents, or whether the seller was a resident of the target location. Likewise, the affidavit did not establish that the seller "was more than a one-time visitor to the apartment" or that the CI observed other drugs inside the residence. Archibald, 334 S.W.3d at 215.

Id.

In Gregory Lamont Hall, the State tried to distinguish the affidavit from that in Archibald by arguing that the affidavit reliably established ongoing criminal activity at the target residence. Id. Specifically, the affidavit stated at the beginning that it "was based upon either the 'affiant's personal knowledge, upon information received from other law enforcement officers, or upon information obtained from other sources as noted' and [the affiant's] statement that he had 'received information that illegal narcotics were being sold at' the target residence." Id. However, this court rejected the State's argument, concluding that the affiant police officer's statement that drugs were being sold at the residence was merely a conclusory allegation and could not reliably establish ongoing criminal activity at the home. Id.

Like Archibald and Gregory Lamont Hall, the affidavit in the instant case involved the one-time sale of heroin. However, we agree with the State that the affidavit at issue is distinguishable from the previous cases. When Woods needed more heroin on March 24, he told the CI that he would contact his source. The CI heard Woods talking to his source on the telephone. Soon thereafter, the Appellant's Ford F-150 arrived at Woods' home but left. The CI and Woods drove to the Appellant's residence and met with the driver of the Ford F-150. The CI then drove Woods back to Woods' home, met with the DTF agents, and turned over the heroin he had purchased from Woods. The CI positively identified the Appellant as the driver of the Ford F-150 and the person Woods met to obtain heroin. As the trial court found, "Given the very close proximity in time and the very closely monitored surveillance by DTF, a common sense, nontechnical approach and practical reading of the affidavit would lead one to believe there were probably drugs at the

defendant's house based on the facts contained in the affidavit." Moreover, the search warrant was issued the same day as the buy underlying the affidavit in support of the search warrant. Accordingly, we conclude that the affidavit established a nexus between the CI's purchase of heroin from Woods and the Appellant's residence and that the trial court did not err by holding that the affidavit provided sufficient probable cause for the issuance of the search warrant.

### III. Conclusion

The judgment of the trial court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE