IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 3, 2025 Session

## STATE OF TENNESSEE v. SEDRICK DARNELL CUMMINGS

Appeal from the Circuit Court for Coffee County
No. 2022-CR-48564F          William A. Lockhart, Judge

_____

No.  M2024-01356-CCA-R3-CD

_____

The Defendant, Sedrick Darnell Cummings, pled guilty to weapons-related offenses after the trial court denied his motion to suppress evidence seized following the execution of a search warrant at his residence.  As a part of the Defendant's plea agreement, he sought to reserve a certified question of law challenging the trial court's decision that the affidavit underlying the search warrant established probable cause to search based upon an anonymous tip and the smell of marijuana.  Following our review, we conclude that the certified question clearly identifies the scope and limits of the legal issue reserved as required by Tennessee Rule of Criminal Procedure 37(b)(2)(A) and that, based upon the totality of the circumstances, the search warrant failed to establish probable cause. Accordingly, the judgments of the trial court are reversed, and the case is dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed; Case Dismissed

KYLE A. HIXSON, J., delivered the opinion of the court, in which JILL BARTEE AYERS and JOHN W. CAMPBELL, SR., JJ., joined.

Paul Andrew Justice, III, Murfreesboro, for the appellant, Sedrick Darnell Cummings.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Hornsby and Ronald L. Coleman, Assistant Attorneys General; Craig Northcott, District Attorney General; and Marcus D. Simmons, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I.  FACTUAL AND PROCEDURAL HISTORY

On September 27, 2022, officers obtained and executed a search warrant for a property located on Summitville Road in Morrison, Tennessee.  The affidavit in support of the search warrant was completed by Investigator Jonathan Anthony of the Coffee County Sheriff's Department.  Investigator Anthony included the following "Statement of Facts in Support of Probable Cause" within this affidavit:

> 1.  On 9/27/2022, I . . . received a phone call from Investigator Brandon Gullet in reference to an anonymous phone call he received.  Investigator Gullett advised . . . [that] the anonymous caller . . . advised him that [the Defendant] was in possession of numerous vacuumed[-]sealed bags that contained marijuana, crack cocaine along with cocaine, numerous firearms and a large amount of cash in a safe located in the bedroom.  The anonymous caller stated that all of these items would be located in the residence.  The anonymous caller also stated that there was a large amount of marijuana located in a vehicle on the property.

> 2. On 9/27/2022 Investigator Brandon Gullett along with Investigator James Sherrill drove to the [Summitville Road] residence [in] . . . Coffee County . . . .  Once they pulled into the driveway of the residence they could smell the odor of marijuana.  Investigator Gullet knocked on the front door of the residence with no answer.  Investigator Sherrill went to the back door of the residence due to having prior knowledge of this being the door that is used to gain entry to the residence.  While knocking on the door in an attempt to make contact at the residence[,] Investigator Sherrill smelled what he knew to be a strong odor of marijuana coming from the back door of the residence.

> 3.  Upon running a criminal history on [the Defendant] through the Tennessee Crime Portal[,] it was revealed that [the Defendant] had been convicted . . . on five different occasions for Schedule VI Drugs: not less than a half ounce and Reckless Endangerment-Deadly Weapon Involved.  See Attachment C for the convictions.

As for these facts establishing probable cause that evidence of a crime would be found at the Summitville Road address, Investigator Anthony made several statements in the affidavit.  First, he alleged that "there [was] probable cause to believe that [the

Defendant was] in possession and control of certain evidence of a crime to wit: violations of state laws as set forth in TCA Section 39-17-417 [Tennessee Drug Control Act of 1989], and TCA Section 39-14-902 [Money Laundering Act Violations.]"  Later in the affidavit, Investigator Anthony stated his belief "that this [was] an ongoing drug business and the residence [was] used in producing counterfeit currency and used to conceal the clothing that was [worn] during the crime of evading arrest."  In conclusion, Investigator Anthony averred that, based upon his knowledge, training, and experience, he had "probable cause to believe that [the Defendant was] a drug dealer" and that the Defendant was "involved in an organized criminal effort to distribute controlled substances and conceal the evidence of criminal simulation and evading arrest in the State of Tennessee."

Investigator Anthony further averred that this residence was "the residence of [the Defendant]" and that "said evidence [was] now located and may be found in possession of said persons or on said premises."  He provided a physical description of the property, and attachments A and B to the affidavit were pictures of the Summitville Road location. Investigator Anthony also attached a screenshot showing the Defendant's various convictions between 2001 and 2003—five for possession of a Schedule VI controlled substance in an amount not less than one-half ounce and one for reckless endangerment with a deadly weapon.

Based upon the information provided in the affidavit, the magistrate determined that probable cause existed and issued the search warrant for the property referenced therein. During the ensuing search, officers discovered: three guns, along with ammunition, inside two of the vehicles parked on the property; approximately eight grams of cocaine inside a suit pocket in the master bedroom closet; approximately twenty-eight grams of marijuana and five narcotic pills in the master bathroom; approximately one gram of marijuana concealed within the living room couch; approximately four ounces of marijuana inside a garbage bag within a vehicle on the property; and $14,655 inside a bedroom safe. Thereafter, the November 2022 session of the Coffee County grand jury returned a ten-count indictment against the Defendant, charging him with possession of one-half gram or more of a Schedule II controlled substance with the intent to sell or deliver (alternate counts 1 and 2); possession of 14.175 grams or more of a Schedule VI controlled substance with the intent to sell or deliver (alternate counts 3 and 4); simple possession of a Schedule II controlled substance (count 5); simple possession of a Schedule IV controlled substance (count 6); possession of a firearm by a person with a prior violent felony conviction (counts 7, 8, and 9); and possession of a firearm during the commission of or attempt to commit a dangerous felony (count 10).  *See* Tenn. Code Ann. §§ 39-17-417, -418, -1307(b)(1)(A), -1324(a).

On October 4, 2023, the Defendant moved to suppress "all evidence" found during the search of the Summitville Road property following execution of the search warrant. The Defendant first argued that the warrant relied on information obtained through "an illegal intrusion upon curtilage" in violation of the Fourth Amendment, with respect to Investigator Sherrill's approaching the back door of the residence and detecting the odor of marijuana coming from inside. He then submitted that, without the information obtained from the illegal intrusion, the warrant failed to establish probable cause.

According to the Defendant, the anonymous tip referenced therein was "incredibly vague" and unreliable because it "fail[ed] to mention this residence specifically" as the location of the alleged crimes, and it failed to assert that the events occurred recently. Similarly, he alleged that the affidavit provided "no indicia that the informant had any basis of knowledge, or any known veracity." He also noted that, although the affidavit named him as the homeowner, "it never provided any facts or testimony to show his ownership based on personal knowledge or even based on records." Finally, he contended that the officers' allegation of "a vague, directionless smell of marijuana in the general air when [they] pulled up" to the residence was insufficient to establish "probable cause to search a specific home or specific set of vehicles."

A suppression hearing was held on December 1, 2023. At the hearing, Investigator Gullett testified that on September 27, 2022, he received a phone call from an informant about narcotics and weapons at the Defendant's residence. Although Investigator Gullett asked some questions to determine how this person had knowledge of such matters, the informant was reluctant to answer. The informant gave specific information that marijuana was located inside a car on the property and that weapons, narcotics, and money in a bedroom safe would be found inside the residence. The conversation was short in duration, lasting only three to five minutes. Investigator Gullet could not recall for certain whether the informant provided the Defendant's address, but he confirmed that he was unfamiliar with the Defendant at the time he received the tip.

After receiving the anonymous tip, Investigator Gullett, accompanied by Investigator Sherrill, traveled to the Summitville Road address sometime that afternoon. They parked nearby and observed the residence for about thirty to forty-five minutes. There were cars parked in the driveway near the back door, but the officers did not know if anyone was home. Not seeing any activity after some time, they decided to approach the residence. As soon as the officers "pulled up and opened the doors," they "immediately smelled the odor of marijuana" upon exiting their vehicle.

Investigator Sherrill explained that there was "a clear . . . walking path to the back door[.]" Despite there being no similar path to the front door, the front door was accessible.

Investigator Gullet went to the front door and knocked loudly, but there was no response. Investigator Sherrill initially stayed by "the side of the trailer," where he could see both the front and back of the mobile home. After Investigator Gullett "smell[ed] a faint odor of marijuana coming from the front door," Investigator Sherrill went to the front door and confirmed the smell.

The officers then decided to walk around the residence to the back door. "[Y]ears ago," Investigator Sherrill had served a search warrant at the same residence, and based upon that prior interaction, he knew the primary avenue of ingress and egress to the residence was the back door. Investigator Sherrill explained that the Defendant had not taken any steps to enclose his backyard and that the back porch was visible from the main road. Investigator Sherrill knocked on the back door, but again no one answered. Investigator Sherrill detected the smell of marijuana at the back door as well.

While the officers were waiting at the residence for the search warrant to be secured, they learned that the Defendant was presently in custody "in [the] Rutherford County Jail." The Defendant's father—who lived across the street and saw the officers waiting there—provided a key to the residence. After the search warrant was obtained, one of the Defendant's friends, using the key provided, let the officers into the residence through the back door to execute the search warrant.

The Defendant testified that he had patio furniture, children's toys, a grill, a water hose, and other "regular backyard stuff" stored on or around his back porch. The Defendant agreed that his backyard and porch were "somewhat" visible from the road. He explained that he usually entered the residence through the back door but that strangers generally used the front door. According to the Defendant, the front door was accessible and had "a door knocker on it."

After hearing arguments from the parties, the trial court took the matter under advisement. On January 5, 2024, the trial court issued a written order denying the Defendant's motion to suppress. First, the trial court concluded that "the back door area was the curtilage of the Defendant[']s home" and that, as a result, Investigator Sherrill had violated the Defendant's Fourth Amendment rights by approaching the back door. The trial court excised the allegation in the affidavit related to the marijuana odor Investigator Sherrill noticed at the back door, but it, nonetheless, concluded that the remaining information in the affidavit established probable cause. The trial court reasoned that "the tip by the anonymous caller [was] corroborated by the smell of marijuana in the driveway."

Thereafter, the Defendant entered a guilty plea to three counts of the lesser-included offense of unlawful possession of a firearm by a convicted felon in counts 7, 8, and 9, a

Class C felony.  In exchange, the Defendant received an effective six-year sentence, and the remaining charges were dismissed.  As part of the Defendant's plea agreement, he reserved a certified question of law:

> The police obtained all contraband used against [the Defendant] through a search warrant for his residential property, and without the fruits of the warrant, the case could not proceed.  [The] Defendant . . . moved to suppress all the fruits of said warrant, arguing that the search [warrant] affidavit did not supply probable cause.  The affidavit relied basically on four items of information—(1) an anonymous tip saying that [the Defendant] possessed drugs and guns at his home, although not specifying his home address, (2) a smell of marijuana when officers pulled into the driveway of the house sought to be searched, (3) [the Defendant's] criminal history, and (4) a clear smell of marijuana coming from the back door.  [The Defendant] argued that the clear smell at the back door must be stricken because it derived from an unlawful search of the curtilage, and that the remaining allegations failed to muster probable cause because they were too vague or unsubstantiated.  After a hearing, the trial court agreed with [the Defendant] that the trip to the back door violated the curtilage, and it excised the allegation about the smell at the back door.  But the court denied the motion upon finding that the remaining allegations—especially the anonymous tip, and the smell in the front driveway—still sufficed for probable cause.  Did the trial court err by finding that the affidavit still showed probable cause for the search warrant?

This appeal followed.

## II.     ANALYSIS

On appeal, the Defendant challenges the trial court's denial of his motion to suppress, seeking our review of the certified question as memorialized.  The State argues that the Defendant has failed to strictly comply with the reservation requirements of Tennessee Rule of Criminal Procedure 37 and that his appeal should be dismissed.  Alternatively, the State contends that the trial court properly denied the Defendant's motion.

### A.     Scope of Certified Question

As to this point, the State contends that the Defendant's certified question is overbroad and does not clearly identify the scope and limits of the legal issue reserved.

Specifically, the State asserts that, although the certified question identifies the "primary issue [of] . . . whether the affidavit demonstrated probable cause," it, nonetheless, fails to "clearly reference the legal principles [the Defendant] relies on, such as the reliability of anonymous tips, the corroboration required for such tips, the nexus and timeliness requirements, the smell of marijuana as it relates to probable cause, and the use of a defendant's criminal history to establish probable cause." The State further notes that the question "does not specifically identify the evidence [the Defendant] sought to suppress," despite including relevant facts surrounding the search. The Defendant disagrees, noting in his reply brief that the certified question (1) includes that primary issue of probable cause and also "expressly touches on the very three sub-issues that the State claims [were] wrongly omitted," and (2) seeks suppression of "all contraband" resulting from execution of the search warrant and that further specification of particular items was not required.

Our supreme court first set forth the prerequisites for certifying a question of law in *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). In 2002, Tennessee Rule of Criminal Procedure 37 was amended to expressly adopt the *Preston* requirements. In relevant part, Tennessee Rule of Appellate Procedure 3 grants a right of appeal to defendants who plead guilty so long as they "explicitly reserved the right to appeal a certified question of law dispositive of the case pursuant to and in compliance with the requirements of Rule 37(b)(2)(A) or (D) of the Tennessee Rules of Criminal Procedure[.]" Tenn. R. App. P. 3(b). The current version of Rule 37(b) states that a criminal defendant may plead guilty and appeal a certified question of law when the defendant has entered into a plea agreement pursuant to Tennessee Rule of Criminal Procedure 11(c) and has "explicitly reserved—with the consent of the [S]tate and of the court—the right to appeal a certified question of law that is dispositive of the case[.]" Rule 37 further imposes the following technical requirements that a defendant must follow in order to properly reserve a certified question:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the [S]tate and the trial court; and

(iv) the judgment or order reserving the certified question reflects that the defendant, the [S]tate, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

Because these procedural requirements are "explicit and unambiguous," they must be strictly followed. *State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003) (first quoting *State v. Irwin*, 962 S.W.2d 477, 479 (Tenn. 1998); and then quoting *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)). In *Preston*, our supreme court emphasized that the burden is on the defendant to ensure that the conditions for properly reserving a question of law pursuant to Rule 37(b)(2)(A) have been met:

[T]he question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by [the] defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. . . . No issue beyond the scope of the certified question will be considered.

759 S.W.2d at 650. Failure to properly reserve a certified question of law will result in the dismissal of the appeal for lack of jurisdiction. *See Pendergrass*, 937 S.W.2d at 837-38; *see also State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001).

We conclude that the scope and limits of the legal issue as reserved by the Defendant are discernable from the certified question as presented. The issue in this case is limited to whether the affidavit in support of the search warrant established probable cause. If probable cause was not present, then "all contraband used" in the prosecution against the Defendant would be subject to suppression. In addition to identifying the primary issue of probable cause, the question notes that the affidavit relied upon (1) an anonymous tip that did not specify the Defendant's address, (2) an odor of marijuana present when the officers pulled into the driveway and later at the back door, and (3) the Defendant's criminal history. The question continues that, once the marijuana smell from the back door of the residence was stricken from the affidavit due to "an unlawful search of the curtilage, . . . the remaining allegations failed to muster probable cause because they were too vague or unsubstantiated." The question then restates the trial court's suppression ruling that, although a violation of curtilage took place, after excising the allegation of

marijuana odor at the back door, probable cause remained based upon the anonymous tip and the smell of marijuana in the driveway—a decision which was in error in the Defendant's opinion.

This is not a case, as the State suggests, where we would have to look outside the certified question to identify the scope and legal limits reserved and require us "to conduct a thorough analysis of [F]ourth [A]mendment search and seizure law and a comprehensive review of the suppression hearing." *See State v. Potts*, No. M2020-01489-CCA-R3-CD, 2021 WL 4714716, at \*5 (Tenn. Crim. App. Oct. 11, 2021). Instead, we are constrained to agree with the Defendant that, "[a]part from simply including a whole appellate brief within the certified question itself, it is hard to see how an issue could be more specific." *E.g.*, *State v. Wiggins*, No. M2010-02518-CCA-R3-CD, 2012 WL 952272, at \*3 (Tenn. Crim. App. Mar. 20, 2012) (noting that the issue was "limited to whether the stop was supported by probable cause or reasonable suspicion" and concluding that the question as reserved sufficiently identified the scope and legal limits of the issue). Accordingly, the certified question here meets the threshold requirements of Tennessee Rule of Criminal Procedure 37(b)(2)(A) and confers jurisdiction on this court. We will proceed to examine the merits of the Defendant's issue.

## B. Merits of the Certified Question

Substantively, the Defendant argues that, after suppression of the evidence obtained through a curtilage violation, the search warrant affidavit failed to allege probable cause, or even reasonable suspicion. The Defendant asserts that the anonymous tip was unreliable, vague, and likely stale and failed to establish a nexus to the place to be searched. He similarly observes that Investigator Anthony gave no basis of knowledge for his statement in the affidavit that the residence belonged to the Defendant. The Defendant also submits that the "vague" smell of marijuana detected by officers in the driveway "did not provide grounds for a search." Finally, the Defendant maintains that recitation of his criminal history, without more, does little to establish probable cause that the residence contained drugs.

The State responds that the trial court "properly excised the information obtained from [the Defendant's] back porch and concluded that the remaining allegations in the affidavit would have given the magistrate 'a substantial basis' to find probable cause." According to the State, the anonymous tip and the smell of marijuana about the property, coupled with the Defendant's criminal history, supported the determination of probable cause when considering the totality of the circumstances.

At a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Therefore, we will uphold the trial court's findings of fact at a suppression hearing unless the evidence preponderates against them. *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014). The party prevailing in the trial court "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id*. at 529. The lower court's application of law to the facts is reviewed de novo with no presumption of correctness. *Walton*, 41 S.W.3d at 81. Moreover, an appellate court on review may consider the evidence presented at the suppression hearing as well as at trial in determining whether the trial court properly denied a pretrial motion to suppress. *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment applies to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

Additionally, the Tennessee Constitution guarantees

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Tenn. Const. art. I, § 7. Tennessee statutory law likewise prohibits general warrants: "A search warrant can only be issued on probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched." Tenn. Code Ann. § 40-6-103; *see also* Tenn. R. Crim. P. 41(c).

Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. *Henning*, 975 S.W.2d at 294. Thus, "[a] sworn and written affidavit containing allegations from which a magistrate may determine whether probable cause exists is an 'indispensable prerequisite' to the issuance of a search warrant." *State v. Saine*, 297 S.W.3d 199, 205 (Tenn. 2009) (quoting *Henning*, 975 S.W.2d at 294). The issuing judge should utilize a totality-of-the-circumstances analysis to determine whether the affidavit establishes probable cause. *State v. Tuttle*, 515 S.W.3d 282, 305 (Tenn. 2017). A defendant seeking to suppress evidence obtained pursuant to a search warrant bears the burden of establishing by a preponderance of the evidence "the existence of a constitutional or statutory defect in the search warrant or the search conducted pursuant to the warrant." *Henning*, 975 S.W.2d at 298.

"Probable cause is more than a mere suspicion but less than absolute certainty." *Tuttle*, 515 S.W.3d at 300 (quoting *State v. Reynolds*, 504 S.W.3d 283, 300 (Tenn. 2016) (citation modified)). "[T]he strength of the evidence necessary to establish probable cause . . . is significantly less than the strength of evidence necessary to find a defendant guilty beyond a reasonable doubt." *State v. Bishop*, 431 S.W.3d 22, 41 (Tenn. 2014). To establish probable cause, the affidavit must show a nexus among the criminal activity, the place to be searched, and the items to be seized. *See State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002); *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). The reviewing magistrate must be able to draw a "reasonable conclusion" from these facts "that the evidence is in the place to be searched." *Tuttle*, 515 S.W.3d at 300 (citing *Smith*, 868 S.W.2d at 572). In addition to the type of crime and the nature of the items or property sought, courts should also consider: "whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct[,] . . . the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence." *Id.* at 301 (quoting *Saine*, 297 S.W.3d at 206). However, an issuing magistrate cannot base a determination of probable cause on "the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

When considering whether probable cause supports the issuance of a search warrant, this court "may consider only the affidavit and may not consider other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Tuttle*, 515 S.W.3d at 299 (quoting *Henning*, 975 S.W.2d at 295). "[O]nly the information contained within the four corners of the affidavit may be considered" in determining whether probable cause supported the issuance of the search warrant. *State v. Keith*, 978 S.W.2d 861, 870 (Tenn. 1998) (citations omitted). This court gives the affiant's words their natural meaning and interpretation and reads the language in the affidavit "in a commonsense and practical manner." *State v. Norris*, 47 S.W.3d 457, 468 (Tenn. Crim. App. 2000) (quoting *State v.*

- 11 -

*Melson*, 638 S.W.2d 342, 357 (Tenn. 1982)); *see also State v. Smith*, 477 S.W.2d 6, 8 (Tenn. 1972). Because "[d]eterminations of probable cause are extremely fact-dependent," reviewing courts should "afford 'great deference' to a magistrate's determination that probable cause exists." *Tuttle*, 515 S.W.3d at 300 (first quoting *State v. Bell*, 429 S.W.3d 524, 534-35 (Tenn. 2014); and then quoting *State v. Jacumin*, 778 S.W.2d 430, 431-32 (Tenn. 1989)). Accordingly, the appropriate standard of review is "whether the evidence viewed as a whole provided the magistrate with 'a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing.'" *Id.* at 299 (quoting *Jacumin*, 778 S.W.2d at 432).

Turning to the law analyzing whether information provided by a confidential informant rises to the level of probable cause, Tennessee courts previously—prior to our supreme court's ruling in *State v. Tuttle*—utilized the two-pronged *Aguliar-Spinelli*[1] test. *See Jacumin*, 778 S.W.2d at 436. Under this test, citizen informants had a presumption of reliability if the affidavit identified the source of the information as a citizen informant. *Tuttle*, 515 S.W.3d at 301 (citing *State v. Williams*, 193 S.W.3d 502, 507 (Tenn. 2006)). In contrast, information supplied by anonymous informants or members of the "criminal milieu" was afforded no presumption of reliability. *Id.* (citing *State v. Smotherman*, 201 S.W.3d 657, 662 (Tenn. 2006)). A search warrant affidavit relying upon an anonymous or criminal informant had to establish both the informant's basis of knowledge and veracity or credibility. *Id.*

The basis of knowledge prong, which existed "to prevent warrants from being issued based on conjecture or rumors," could be satisfied by including that the informant personally observed the relevant events or obtained the information firsthand. *Id.* at 302 (citation omitted). The reliability prong dealt with the truthfulness of the informant in which "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Conclusory statements absent supportive detail were insufficient to establish these requirements. *See id.* at 339. However, the "requisite volume or detail of information needed to establish the informant's credibility [was] not particularly great." *Tuttle*, 515 S.W.3d at 302 (quoting *State v. Lowe*, 949 S.W.2d 300, 305 (Tenn. Crim. App. 1996)).

Moreover, independent police corroboration of the information provided by the informant could make up the deficit in either prong, although it did not need to "supply probable cause by [itself] or . . . point unequivocally in the direction of guilt." *Moon*, 841 S.W.2d at 341 (citation omitted); *see also Tuttle*, 515 S.W.3d at 302. "Corroboration of

---

[1] The test was named after the United States Supreme Court's decisions in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969).

'only innocent aspects of the story' may suffice." *Bishop*, 431 S.W.3d at 38 (quoting *Melson*, 638 S.W.2d at 355); *see also Gates*, 462 U.S. at 244. However, "[c]orroboration of more than a few minor elements of the informant's information is necessary, . . . especially if the elements relate to non-suspect behavior." *Smotherman*, 201 S.W.3d at 664 (first citing *Moon*, 841 S.W.2d at 341; and then citing *United States v. Bush*, 647 F.2d 357, 363 (3d Cir. 1981)).

In *Tuttle*, our supreme court overruled *Jacumin* and abandoned the *Aguilar-Spinelli* test for determining the reliability of informants in favor of the totality-of-the-circumstances analysis for determining whether an affidavit establishes probable cause for issuance of a warrant announced in *Gates*. *Tuttle*, 515 S.W.3d at 289, 305-08. Nevertheless, in doing so, our supreme court did not take the informant's basis of knowledge and veracity "out of the equation." As the court explained,

> We reiterate that, under the totality-of-the-circumstances analysis, the informant's basis of knowledge and veracity or credibility remain highly relevant considerations. Rather than separate and independent considerations, they "should [now] be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question [of] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place."

*Id.* at 308 (quoting *Gates*, 462 U.S. at 230). We now turn to our analysis of the various circumstances relevant to this case, which will culminate with our examination of the totality of those circumstances.

### 1. Reliability, Veracity, and Credibility of Anonymous Tip

In the instant case, the first circumstance to consider is whether the reliability, credibility, and veracity of the anonymous caller were sufficiently established. The Defendant submits that the anonymous tip was unreliable, vague, and perhaps stale, and thus, it failed to provide any "indicia that the informant had any basis of knowledge, or any veracity." The Defendant acknowledges that "the tip claimed that [he] possessed drugs in a safe, in bags, and in a car," but he notes that, otherwise, the affidavit "said nothing about how the [informant] knew such facts." The Defendant further observes that the informant failed to "provide any chronology" for the occurrence of these events and "predicted no future acts."

Here, the information came through an anonymous tip, and the search warrant affidavit is devoid of information establishing the basis of the informant's knowledge.

Instead, the search warrant affidavit provides only a conclusory statement that the Defendant was in possession of illicit drugs, various weapons, and a large amount of cash inside his residence, as well as a large amount of marijuana located inside a vehicle on the property. The search warrant affidavit gave no indication that the informant had observed these items inside the residence firsthand, nor did it identify how the informant might have learned of this information through some other means. Moreover, while certain inferences may be made from possession of certain items alone like drugs, guns, and cash, there was no information ever conveyed regarding the Defendant's preparation, use, or exchange of any items in furtherance of the drug trade, rather there was merely an assertion that these items were present at his residence at some point in time.

The Defendant also correctly notes that "the affidavit fails to describe any time frame at all—except that one police officer spoke *to another officer* on the day leading up to the search." If a date is omitted, then the affidavit must at least show "facts stated from which the issuing magistrate can conclude that the facts are sufficiently recent to support a finding of probable cause." *State v. Longstreet*, 619 S.W.2d 97, 99 (Tenn. 1981) (noting that no chronology was given in the affidavit and consequently determining that "these events may have happened an hour, a month, or a year before"). Here, nothing in the search warrant affidavit established that the anonymous informant's information regarding the Defendant and his possession of illegal contraband was based on recent knowledge. *See State v. Pipkin*, No. W2007-01110-CCA-R3-CD, 2008 WL 4117966, at *8-9 (Tenn. Crim. App. Sep. 4, 2008) (concluding, prior to *Tuttle*, that the absence of dates or any other chronology was, *inter alia*, an important defect justifying the suppression of evidence).

### 2. Nexus of Activity at the Defendant's Residence

The next circumstance to consider is whether the anonymous tip provided a nexus among the criminal activity, the place to be searched, and the items to be seized. The Defendant argues that "nothing ever links the informant's tip to the place to be searched." The Defendant notes that "the informant's tip appears to allege that [he] kept drugs in *his* house, but it never specified that he even lived at" the Summitville Road address. The Defendant further observes that, although "the police officer does allege that the address belonged to [the Defendant], . . . [the officer] gives no basis of knowledge for this allegation."

While the informant explicitly stated that the Defendant was storing the drugs, cash, and firearms in his bedroom and in vehicles on his property, there was nothing in the anonymous tip to establish the Summitville Road address as the target location. Moreover, there was nothing in the tip itself to show whether the criminal activity under investigation was an isolated event or a protracted pattern of conduct. Even if the affidavit contained

information establishing a nexus between the undisclosed location of the Defendant's residence and the criminal activity, it did not contain any information to establish how long that nexus would persist. *See State v. Archibald*, 334 S.W.3d 212, 215-16 (Tenn. Crim. App. 2010) (concluding that the information in the affidavit became stale as soon as enough time had passed for a one-time drug seller to leave the apartment).

And, while Investigator Anthony stated that the Summitville Road location was the Defendant's residence, there is nothing in the affidavit to show how he acquired this information. While "the veracity of an officer affiant does not have to be independently established in the affidavit," *see also Moon*, 841 S.W. 338 n.1, the requirement "that the affidavit must establish probable cause to believe that the contraband to be searched for is actually located at the premises to be searched at the time the search warrant is issued, is not dispensed with simply because the affiant is a police officer." *State v. Talley*, No. M2013-00490-CCA-R3-CD, 2014 WL 274080, at *3 (Tenn. Crim. App. Jan. 24, 2014). To establish probable cause, an affidavit must set forth facts from which a reasonable conclusion may be drawn that the evidence will be found in the place for which the warrant authorizes a search. *State v. Vann*, 976 S.W.2d 93, 105 (Tenn. 1998); *Longstreet*, 619 S.W.2d at 99.

Here, we are not confronted with an ambiguous description of the property, but rather, the omission of important details. Investigator Anthony's simply alleging that this residence belonged to the Defendant—without providing any factual basis of knowledge of this fact either through the informant, his own independent investigation, or some other means—is inadequate to establish probable cause that the contraband to be searched for was actually located at the Summitville Road property. *Cf. United States v. Courtney*, 730 Fed. Appx. 287, 291 (6th Cir. 2018) (holding that information provided by an informant known to law enforcement and who had provided credible information in the past, corroborated by law enforcement's surveillance of the defendant, was sufficient to establish probable cause (citing *United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013))). The magistrate reads the affidavit—and does not review property records or evaluate post hoc events—to determine whether probable cause exists to search a place. Thus, in this case, the magistrate would have to speculate that the informant had referenced the Summitville Road address as the target location or that Investigator Anthony had somehow confirmed the residence at this location belonged to the Defendant.

### 3. Odor of Marijuana

The next circumstance to consider is whether the odor of marijuana in the driveway provided probable cause to search, or at a minimum, sufficient corroboration of the anonymous tip. The Defendant cites to our supreme court's recent opinion in *State v.*

*Green*, 697 S.W.3d 634 (Tenn. 2024), for the proposition that "the odor of marijuana, by itself, does not generate probable cause since even innocent plants will smell the same as marijuana." He notes that the affidavit did not "point to any specific nexus" for the source's odor, but rather "[i]t just said that [the odor of] marijuana could be identified *somewhere in the air*." He concludes that "the weak and vague odor in the front driveway did not amount to probable cause that any marijuana (or even hemp) was being stored" on the property.

In *State v. Green*, our supreme court considered the issue of "how the legalization of hemp affects a probable cause analysis where law enforcement relied, in part, on a positive alert from a drug-sniffing canine incapable of differentiating between the smell of legal hemp and illegal marijuana." 697 S.W.3d at 636-37. The court concluded that "determining whether probable cause exists is a totality-of-the-circumstances inquiry" and that the odor of marijuana "is still probative of whether or not illegal substances are located inside of an automobile and should therefore still be considered in a totality-of-the-circumstances analysis." *Id.* at 644. The court further stated that, while the legalization of hemp "may add a level of ambiguity" as to the probative value of the odor of marijuana in a probable cause determination, it "does not destroy the fact's usefulness outright and require it to be disregarded." *Id.* at 643 (citation omitted). The court also explicitly rejected a per se rule of probable cause based solely on the detection of the odor of marijuana. *Id.* at 642 ("To the extent any prior opinions of the Court of Criminal Appeals or this Court imply or provide a per se rule of probable cause based on a positive alert in this context, they are overruled."). For purposes of analysis, we note that this court has observed "there is no practical difference for purposes of [its] analysis" where "an officer, not a trained canine, smell[ed] marijuana." *State v. Green*, No. M2022-00899-CCA-R3-CD, 2023 WL 3944057, at *3 (Tenn. Crim. App. June 12, 2023), *aff'd*, 697 S.W.3d 634 (Tenn. 2024).

Thus, the question remains whether the odor in the driveway is sufficient to corroborate the information in the anonymous tip or whether, under a totality-of-the-circumstances analysis, the odor could form an independent basis for probable cause to search the residence. The State claims that "[r]eading the full affidavit, and looking at the photographs, in a commonsense manner would have allowed the magistrate to conclude that the odor was coming from [the Defendant's] house or vehicles, as alleged in the tip." Investigator Anthony notes that the officers smelled marijuana upon pulling into the driveway of the residence; however, his description lacks any further specifics. The search warrant affidavit does not provide any additional information regarding the purported source of the odor, such as the location from which the odor was emanating, either a certain vehicle or the residence. In order to corroborate the tip here, which included information that there was a large amount of marijuana stored in a vehicle on the property, the smell would at least need to be connected to one of the vehicles parked at the residence, if not

- 16 -

the residence itself, but it was not connected to any specific area on the premises. This was nothing more than a general odor of marijuana about the property.

We cannot say that this particular smell, as memorialized by Investigator Anthony in the affidavit, provided sufficient corroboration of the anonymous tip to support probable cause to search the Summitville Road property. Furthermore, applying the principles of *Green* set forth above, the odor in the driveway as described in the affidavit, standing alone, does not provide an independent basis to search the vehicles and residence in question, regardless of whether they belonged to the Defendant. *See* 697 S.W.3d at 642.

### 4. The Defendant's Criminal History

The final circumstance to consider is the inclusion of the Defendant's prior criminal history in the affidavit. According to the Defendant, generally, "a suspect's criminal history . . . alone will not be dispositive one way or the other." The Defendant, citing *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016), argues that "[w]here an affidavit fails to provide facts directly connecting the residence to drug possession, or where it contains facts but they are unreliable, even a suspect's status as a known drug dealer will not justify an inference that his house contains drugs." The Defendant notes the age of his past convictions and concludes that, while they "might hold some relevance, they simply do not establish probable cause—not even when combined with the other points of 'unreliable' evidence."

A defendant's prior drug-related conviction can serve as corroboration for an informant's tip. *See Williams*, 193 S.W.3d at 509. However, a suspect's prior "status as a drug dealer, standing alone," does not give "rise to a fair probability that drugs will be found in his home." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). Rather, "some reliable evidence connecting the known drug dealer's *ongoing* criminal activity to the residence" is required. *Brown*, 828 F.3d at 383 (emphasis added). While many of the Defendant's convictions were for drug possession, they were not indicative of any ongoing drug sales as they were over twenty years old, having occurred between 2001 and 2003. Moreover, the type and actual amount of the drug or drugs possessed for these conviction offenses was not apparent from the information attached to the affidavit. This information does little to corroborate an anonymous informant's tip in 2024. The allegation that the Defendant was a drug dealer in years past, without more, is insufficient to tie the alleged current criminal activity to the Defendant's residence. *See Frazier*, 423 F.3d at 533.

- 17 -

### 5. Application of the Totality of the Circumstances

Considering the foregoing, we must conclude, although a close case, that the totality of the circumstances weighs in favor of suppression. The information known to the magistrate at the time the warrant was issued was insufficient to connect this residence with the Defendant and recent criminal activity. We agree with the Defendant that the anonymous informant's tip was unreliable, vague, and possibly stale for the reasons discussed above. Moreover, other than conclusory statements, unsupported by any indicia of particular confirmation or an established basis of knowledge, the affidavit does nothing to demonstrate that the target address was actually the Defendant's residence, thus creating a real danger that this residence was not in fact the Defendant's and that the search warrant could have been served at the wrong location. In addition to alleging that the Defendant was engaged in an ongoing drug business, the search warrant affidavit inexplicably references probable cause to search based upon the crimes of evading arrest, counterfeit currency, and criminal simulation, without any explanation of how this behavior related to the Defendant or his alleged drug sale activity.

The anonymous tip in this case did not contain direct information connecting the object of the search, the Summitville Road address, with the Defendant's alleged criminal activity. *See State v. Archey*, No. M2024-00755-CCA-R9-CO, 2025 WL 732673, at *6 (Tenn. Crim. App. Mar. 7, 2025) (noting that the search warrant affidavit "did not contain direct information connecting the object of the search, the cell phone, with the murder" and then proceeding with an analysis of "whether it was reasonable for the magistrate to infer that information connecting the [d]efendant to the location of the murders and communications with others involved in the murders would be located on the [d]efendant's cell phone"), *perm. app. denied* (Tenn. Aug. 7, 2025). Investigator Anthony's bare assertion that the Defendant was the owner of said property, without more, is insufficient to provide the necessary inferences that this property belonged to the Defendant. Finally, as discussed above, the smell of marijuana detected when the officers arrived in the driveway and inclusion of the Defendant's decades-old drug convictions do not sufficiently corroborate the anonymous informant's tip so as to provide probable cause and save this search warrant, nor do they provide an independent basis to search the vehicles and residence in question, regardless of whether they belonged to the Defendant.

Thus, the search warrant affidavit failed to set forth sufficient facts from which the magistrate could reasonably conclude that the referenced evidence of the Defendant's alleged criminal activity would be found at the Summitville Road location. Stated another way, the information in the affidavit failed to provide the magistrate with a substantial basis for determining that a search of the Summitville Road address would uncover evidence of the Defendant's wrongdoing.

- 18 -

### III. CONCLUSION

In accordance with the foregoing, the decision of the trial court denying the Defendant's motion to suppress is reversed. The judgments are reversed, and the charges against the Defendant are dismissed.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE
